THE NORTH CHICAGO STREET RAILWAY COMPANY

*v.*

JAMES W. COTTON.

*Filed at Ottawa January 18, 1892.*

1. NEGLIGENCE—*injury raises presumption of.* Where a train of cable cars on which the plaintiff was a passenger, standing on the platform of the rear car, came to a stop when about half way through a tunnel, and remained standing several minutes, when another train descending through the tunnel collided with the rear car of the standing train and thereby inflicted a personal injury, it was *held*, that the mere fact of the injury raised a presumption of negligence, which was sufficient to sustain a general charge of negligence in the running and operating of the defendant's road and the cars propelled thereon.

2. As a general rule, proof of an injury occurring as the proximate result of an act which, under ordinary circumstances, would not, if done with due care, have injured any one, is enough to make out a presumption of negligence; and this rule applies even when no special relation, like that of passenger and carrier, exists between the parties.

3. In a suit by a passenger for an injury, the mere proof of the accident by which the injury was inflicted may be sufficient to throw the burden on the carrier to show that he used due care; and when there is an absence of *vis major*, and it is shown that the injury happened from the abuse of agencies within the defendant's power, it will be inferred from the mere fact of the injury that the defendant acted negligently.

4. Even if such presumption is one of negligence generally, and not of any specific negligence, it will be sufficient to throw upon the defendant the burden of rebutting the specific negligence alleged.

5. EVIDENCE—*too remote.* Where a party suing for a personal injury had a leg amputated ten years before the injury complained of, the defendant sought to prove that at a period anterior to such amputation the plaintiff had some disease which, though dormant from the time of the amputation to the date of the recent injury, may then have manifested itself again, and have been the real cause of some portion of his sufferings: *Held*, that the matter thus sought to be investigated was too remote, and the inferences sought to be drawn from it too conjectural, and that the proposed evidence was properly refused.

6. SAME—*of negligence in operating cars.* Under a general charge of negligence in the running and operation of defendant's cars, whereby an injury was received by a collision of cars, evidence of the structure

and condition of the colliding car, and of the fact that it was not supplied with a sand-box or appliance which would have made it more easy to slacken or arrest its progress on a descending grade, is material and proper, as bearing on the question of the manner in which it should have been run and operated, and the character and degree of care with which it should have been managed, although the structure of the car and the want of a sand-box may not be alleged specifically as negligence.

7. SAME—*proper cross-examination.* In an action to recover for a personal injury the plaintiff was called, but no question was asked him as to his health prior to the time of his injury. Defendant proposed, on cross-examination, to ask him questions as to whether, at any previous time, he had been afflicted with any disease, which the court, on objection, refused : *Held,* that such questions were not within the scope of a proper cross-examination, and the exclusion was justified, though the record failed to show that the objection was on that ground.

8. SAME—*sustaining objection to admission of.* Where a general objection to the admission of evidence is sustained, the ruling of the court will be sustained if any tenable objection to the same in fact existed.

9. SAME—*must follow declaration.* A plaintiff must recover, if at all, upon the case made by his declaration. So a plaintiff can not charge one species of negligence in his declaration, and recover upon proof of negligence of a different character.

10. The fact that evidence admitted in an action based on negligence may tend to support a charge of negligence not made by the declaration, will not render it improper, if it has a material bearing upon one or more of the charges of negligence made. The defendant may, by instruction, limit such evidence to the charges made in the declaration.

11. PHYSICIAN'S BILL—*recovery of amount paid in personal injury case.* Where the plaintiff in an action to recover damages for a personal injury alleges that he was compelled to and did pay out and expend large sums of money in and about being cured of his injuries, it will not be sufficient for him to prove merely that he has paid a certain physician's bill, in order to its recovery, but he must also show that by reason of his injuries he has necessarily incurred such bill, and that it is reasonable.

12. SAME—*failure to prove payment of, in personal injury case.* In such case the court, on specific objection, may, before admitting proof of the plaintiff's liability incurred in the employment of a physician, and its amount and reasonableness, require an assurance from counsel that he will follow up the evidence by proof of payment. On failure to prove that such a bill has been paid, defendant should move to exclude all evidence in relation to the physician's bill, or ask the court to instruct the jury to disregard it.

13. PHYSICIAN—*proof of right to practice medicine.* Where the question of a physician's qualifications and right to practice in his profession arises only collaterally, proof that he has practiced medicine in this State for a long time will show, *prima facie,* that he was lawfully entitled to practice. But if he were to sue to recover for professional services, he would doubtless have to show affirmatively his compliance with the law regulating the practice of medicine.

14. PRACTICE—*power of trial judge to restrain counsel within due bounds.* The trial judge has the power to keep counsel within due bounds, and should use it promptly and impartially, without waiting for an objection. He is not required to permit continual interruption of counsel in their address to the jury, under the guise of objecting, but should see that each party has an opportunity to fairly present his side of the case.

15. SAME—*presumption judge has suffered no misconduct of counsel.* Every reasonable presumption will be indulged that the trial judge has performed his duty and has properly exercised the discretion vested in him, and that he has permitted no misconduct of counsel materially prejudicial to the opposite party to intervene, unless such misconduct and its prejudicial nature are clearly shown by the record.

16. PRACTICE IN SUPREME COURT—*improper remarks of counsel—how shown.* Before this court can consider improper remarks made by counsel in argument to the jury, it must be shown by the bill of exceptions that the trial court was called upon to make, or did make, a ruling. It is not sufficient for the bill of exceptions to show, after the improper remarks, "excepted to by counsel," etc., where nothing is shown that any objection was interposed, or that the court was called upon to make any ruling to which the exception could apply.

17. SAME—*error does not always reverse.* In an action to recover for an injury resulting from a collision of cars through negligence, the declaration alleged, as an element of special damages, that his artificial leg, of the value of $200, was destroyed, but there was no averment as to the purchase of a new one. On the trial there was evidence of the value of such leg. The plaintiff was allowed to testify that he paid $207 for a new leg. The Appellate Court required plaintiff to remit $207 from his judgment, and affirmed the same as to the residue: *Held,* that the error in the admission of the evidence as to the cost of the new leg was thereby eliminated from the case.

18. Where the evidence of an injury to the plaintiff, and the circumstances under which it was inflicted, are alone sufficient to raise a presumption of negligence on the part of the defendant, and no evidence is offered to rebut that presumption, so that the plaintiff is entitled to recover regardless of the evidence admitted, such evidence, though variant from the allegation, will not be such an error as to require a reversal.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. ELLIOTT ANTHONY, Judge, presiding.

Mr. WILLIAM J. HYNES, and Mr. EDMUND FURTHMANN, for the appellant:

The court erred in the admission of evidence of acts of negligence not charged in the declaration.  *Railway Co.* v. *Magee,* 60 Ill. 529; *Railway Co.* v. *Foss,* 88 id. 551; *Railroad Co.* v. *Beggs,* 85 id. 80; *Railroad Co.* v. *McKee,* 43 id. 119; *Bloomington* v. *Goodrich,* 88 id. 558; *Moss* v. *Johnson,* 22 id. 633; *Railway Co.* v. *Troesch,* 68 id. 545; *Guest* v. *Reynolds,* id. 478.

Special damages improperly allowed but not pleaded. Special damages to be recovered must be alleged in the declaration.  *Adams* v. *Gardner,* 78 Ill. 568; *Railroad Co.* v. *Hale,* 83 Ill. 360; *Chicago* v. *O'Brennan,* 65 id. 160; *Miles* v. *Weston,* 60 id. 361; *Horne* v. *Sullivan,* 83 id. 30; *Olmstead* v. *Burke,* 25 id. 86; *Barrelett* v. *Bellgard,* 71 id. 280; *Railway Co.* v. *Ware,* 84 Ky. 267.

The court erred in excluding evidence of the plaintiff's prior health.  *Rogers* v. *Crane,* 30 Texas, 284; Lawson on Expert Evidence, 108, 147; *Walton* v. *Cottingham,* 30 Texas, 772; *Railroad Co.* v. *Riley,* 39 Ind. 568; *Houston* v. *Traphague,* 47 N. J. 23.

As to the improper remarks and conduct of counsel, see *Meredeth* v. *People,* 84 Ill. 480; *Paper Co.* v. *Banks,* 15 Neb. 20; *Wolfe* v. *Morris,* 74 Ala. 386; *Berry* v. *State,* 10 Ga. 522; *Hennies* v. *Vogel,* 87 Ill. 242; *Kepperly* v. *Ramsden,* 83 id. 354; *Railroad Co.* v. *Carlosso,* 77 Ala. 443; *Tucker* v. *Henricker,* 41 N. W. 318.

Messrs. STILES & LEWIS, and Mr. CHARLES M. PEALE, for the appellee:

*Prima facie,* when a passenger being carried on a train is injured without fault of his own, there is a legal presumption

of negligence, casting upon the carrier the burden of disproving it.     Cooley on Torts, 796 ; *Railroad Co.* v. *Reynolds,* 88 Ill. 418 ; *Railroad Co.* v. *Thompson,* 56 id. 138.

There was no error in refusing evidence of the health of the plaintiff many years before the accident causing the injury.

The meagre damages awarded show that the jury were not prejudiced by any remarks of counsel.     The merits of the case are clearly with the appellee.

Mr. JUSTICE BAILEY delivered the opinion of the Court:

This was an action on the case, brought by James Whitcomb Cotton against the North Chicago Street Railway Company, to recover damages for a personal injury.     The plaintiff, at the time he was injured, was a passenger on one of the defendant's street cars, run by cable, and was standing on the rear platform of the car.     While in that position, as he was passing through the LaSalle street tunnel, he was run into by another of the defendant's cars following on the same track, thereby receiving the injuries complained of.

The declaration consists of three counts.     The charge of negligence in the first count is as follows :     "And the defendant, then and there, so negligently ran and operated its said road and the cars propelled thereon, that by reason thereof, the car in which the plaintiff was then and there being carried as aforesaid, was run into from the rear by another car then and there being run by the said defendant upon said street, and thereby the plaintiff, who was then and there in the exercise of all due care and caution, was greatly hurt, bruised," etc.

The second count alleges that, while the car on which the plaintiff was being carried was temporarily stopped and at rest, it was approached from the rear by another car called a grip-car, drawing a train of two ordinary cars ; "that by and through the negligence of the said defendant, the grip of the said grip-car was then and there defective and out of order, so that the same could not be detached or disconnected from the

said cable, and thereby the said grip-car was propelled violently against the car in which the plaintiff was riding as aforesaid," and thereby he was injured.

The third count alleges that the car on which the plaintiff was being carried, while temporarily stopped and at rest, was approached from the rear by another car of the defendant called a grip-car, drawing a train of two ordinary cars; "that the brakes on the last mentioned train of cars were defective, insufficient and out of order, of which the defendant then and there had notice, and by and through the negligence of the defendant in that behalf, the last mentioned train of cars could not be brought to a stop in time to prevent a collision with the car in which the plaintiff was then and there riding as aforesaid, but was driven violently upon and into said car," and thereby the plaintiff was injured.

The defendant pleaded not guilty, and at the trial the jury found the defendant guilty, and assessed the plaintiff's damages at $2000. For this sum and costs the plaintiff had judgment. On appeal to the Appellate Court the plaintiff remitted from his said judgment the sum of $207, and the judgment was thereupon affirmed. The present appeal is from said judgment of affirmance.

The grounds upon which a reversal of the judgment was sought in the Appellate Court, and is now asked for here, are, 1. The admission by the trial court of improper evidence; 2. The exclusion of competent and proper evidence, and, 3. The misconduct of the counsel for the plaintiff at the trial.

The evidence shows that, on the 3d day of November, 1888, the plaintiff got on board of one of the defendant's trains of cable cars, on Dearborn street in the South Division of Chicago, to be carried as a passenger to a point in the North Division of said city. The car the plaintiff took was the rear car of the train, and the seats in said car being all occupied, with a number of persons standing up, the plaintiff and sev-

eral others took a position on the rear platform of the car. Before reaching the LaSalle street tunnel under the Chicago River, various other passengers got on board, so that on reaching the tunnel, little if any standing room remained in the car. The train proceeded about half way through the tunnel and there came to a halt, the plaintiff and others still remaining standing on said platform. A few minutes after the train stopped, another train approached rapidly on the same track from the rear, and those in charge of it being unable or failing to stop it, said train ran against the car on which the plaintiff was standing, and struck the plaintiff, inflicting the injury of which he complains.

The colliding train consisted of a grip-car and two ordinary cars attached thereto, all being heavily loaded with passengers. The driver of the grip-car, after descending a short distance into the tunnel, saw the other cars ahead of him, but at first was unable to determine whether they were in motion or standing still. As soon as he discovered that they were standing still, he detached the grip from the cable and turned on the brake which was on his car, but finding that said brake was insufficient to check the speed of the train, he signalled to the conductors on the other cars to also put on the brakes on those cars, but said conductors being inside their cars, engaged in the collection of fares, his signals were unheeded, and the brakes on the other cars were not applied. As a consequence, the weight and momentum of those cars forced the grip-car forward until it collided with the car in front of it. The foregoing facts were not contradicted at the trial and are not disputed here.

The plaintiff at the time was wearing an artificial leg, one of his legs having been amputated above the knee about ten years before. The other passengers escaped from the platform before the collision, but the plaintiff was unable to do so, and the colliding car, as he claims, struck him so as to press him against the end of the car on which he was riding, break-

ing his artificial leg, and bruising and lacerating the stump of the leg which had been amputated.

John H. Timms, the grip-car driver on the colliding train was called as a witness for the plaintiff, and in the course of his examination he was asked whether he had any sand-box on his train, and was permitted, against the objection and exception of the defendant, to answer that he did not. He was also permitted to testify, against the objection and exception of the defendant, that the colliding car was an old horse-car made over into a grip-car.

Walter L. Tilton, a grip-car driver in the employ of the Chicago City Railway Company, who had had over three years' experience in the management of grip-cars, being called as a witness for the plaintiff, was asked whether, in his opinion, for the proper control of cable-cars, with reference to human life and safety, a sand-box should be used upon the grip-car. To this, he was permitted, against like objection and exception, to answer: "It is a great help, sir, when the track is slippery."

It is insisted on the part of the defendant, that the admission of this evidence was improper and erroneous, because the declaration contains no charge of negligence in failing to have said grip-car furnished with a sand-box, or in using an old horse-car made over into a grip-car.

The rule is a fundamental one, that a plaintiff must recover, if at all, upon the case made by his declaration, and in the application of this rule to actions on the case for negligence, it is held that a plaintiff can not charge one species of negligence in his declaration and recover upon proof of negligence of a different character. But we are of the opinion that this rule can not be invoked here for two sufficient reasons.

In the first place, under the circumstances of this case, this evidence to which exception was taken, could have resulted in no prejudice to the defendant. The evidence of the injury to the plaintiff and the circumstances under which it was

inflicted, were, alone, sufficient to raise a presumption of negligence on the part of the defendant, and as no evidence was offered to rebut that presumption, a verdict in favor of the plaintiff necessarily followed, wholly regardless of the evidence objected to. The general rule seems to be, that proof of an injury occurring as the proximate result of an act which, under ordinary circumstances, would not, if done with due care, have injured any one, is enough to make out a presumption of negligence. And this is held to be the rule even where no special relation, like that of passenger and carrier exists between the parties. Thus, in *Byrne* v. *Boadle*, 2 Hurlst. & Colt. 722, the plaintiff was injured by a barrel falling from the window of a warehouse into the highway, and it was held that the mere fact of the injury and the cause of it created a presumption of negligence on the part of the warehouse-keeper, the court remarking that a barrel can not roll out of a warehouse window without some negligence. So, in *Scott* v. *London, etc. Docks Co.* 3 Hurlst. & Colt. 596, the plaintiff, an officer of the customs, was at the defendant's docks, in the discharge of his duty, and as he was passing from one doorway of the defendant's warehouse to another, he heard a rattling of chains, and six bags of sugar fell on him. On proof of these facts alone a recovery of damages was sustained, the court laying down the law as follows: "There must be reasonable evidence of negligence. But where the thing is shown to be under the management of the defendant or his servants, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from want of care."

In many cases it has been held, that, in a suit by a passenger against a carrier for an injury, the mere proof of the accident by which the injury was occasioned is sufficient to throw the burden on the carrier to show that he exercised due care; and there seems to be a very general concurrence of

authority that, where there was an absence of *vis major*, and it is shown that the injury happened from the abuse of agencies within the defendant's power, it will be inferred from the mere fact of the injury that the defendant acted negligently.     See 2 Wharton on Negligence, sec. 661, and cases cited in notes.

In this State the doctrine as to presumptions above referred to has been fully recognized in repeated decisions.     Thus, in *G. & C. U. R. R. Co.* v. *Yarwood,* 17 Ill. 509, the plaintiff, while a passenger, was injured in consequence of the car in which he was riding being thrown from the track, and it was held that he need only show that he had received an injury to make out a *prima facie* case against the carrier, and that in order to exonerate itself, the burden was on it to rebut the presumption. So, in *P., C. & St. L. Ry. Co.* v. *Thompson,* 56 Ill. 138, it was held that, in an action against a railroad company for a personal injury received from the alleged negligence of the defendant, if it be shown by the plaintiff that the injury was caused by the overturning of a car on the defendant's road, in which he was a passenger, without fault on his part, he thereby makes out against the company a *prima facie* case of negligence, and places upon it the burden of rebutting that presumption by proving that the accident resulted from a cause for which it could not be held responsible.  To same effect see, *P., P. & J. R. R. Co.* v. *Reynolds,* 88 Ill. 418; *Eagle Packet Co.* v. *Defries,* 94 id. 598.

But it seems to be contended that, even admitting that a presumption of negligence arises from mere proof of the plaintiff's injury and its cause, it does not follow that there is any presumption of the specific negligence alleged in the declaration.     Even if it be admitted that the presumption is one of negligence generally, and not of any specific negligence, we think it sufficient to throw upon the defendant the burden of rebutting the specific negligence alleged.     But the circumstances of the injury do, in our opinion, give presumptive evidence of at least the specific negligence charged in the first

count of the declaration. That charge, as we have seen, is very general, and consists of negligently running and operating its road and the cars propelled thereon. A collision between two trains of cars having occurred under the circumstances detailed by the evidence, the first and most natural inquiries arising in any ordinary mind are those which call for explanation in relation to the operation and running of the two trains. Why was the train on which the plaintiff was a passenger brought to a halt and allowed to stand several minutes when half way through the tunnel, when other trains were coming down the steep descent from the entrance to the middle of the tunnel? Why was this done without taking any of the ordinary precautions to prevent collisions from the rear? Why were not proper parties stationed at the brakes on all the cars of the colliding train while making the descent, so as to be ready to guard against or prevent disasters of this character? These and other similar inquiries, all pertaining to the operation and management of the road and its cars, naturally arise and call for an answer, and being unanswered, a conclusive presumption arises that the defendant was negligent in those respects.

But, secondly, we are of the opinion that the evidence complained of was not improper. It may be admitted that evidence of want of a sand-box on the colliding grip-car, or of the fact that said grip-car was an old horse-car modeled over, was inadmissible as tending to support an independent charge of negligence in those respects, and the defendant was entitled to have the jury instructed that, under the declaration, the plaintiff could not recover on the ground of such negligence. But we think evidence of the structure and condition of the colliding car, and of the fact that it was not supplied with an appliance which would have made it more easy to slacken or arrest its progress on a descending grade, was material and proper as bearing upon the question of the manner in which it should have been run and operated, and the character and

degree of care with which it should have been managed. To illustrate, a stage-driver in charge of a weak and decrepit vehicle would be required to run it over a rough and dangerous road in a very different manner from what he would if his vehicle was staunch and sound. Or if he had adequate brakes on his vehicle, he would be justified in taking so to speak, greater chances in going down a steep descent than he would if he had no such appliances. So here, the grip-car driver having no sand-box on his car, was called upon to use greater promptness and vigilance in the use of his other less efficient means of controlling the speed of his train while descending into the tunnel where collisions were likely to take place. The fact that said evidence also tended to support a charge of negligence not made by the declaration did not render it improper, so long as it had a material bearing upon one or more of the charges of negligence made.

Complaint is made of the admission of evidence of the sum the plaintiff was compelled to pay for an artificial leg to take the place of the one destroyed by the collision. The declaration alleges, as an element of special damages, that his artificial leg, of the value of $200 was broken and spoiled, but there is no averment as to the purchase of a new artificial leg or the sum paid for it. On the trial the plaintiff gave no evidence of the value of the artificial leg broken, but was permitted, over the defendant's objection, to testify that he paid $207 for his new artificial leg. The Appellate Court held that the admission of this evidence was erroneous, and required the plaintiff, as a condition to the affirmance of his judgment, to remit therefrom said sum of $207. That sum having been remitted, and the judgment having been affirmed only as to the residue, the error in the admission of this evidence seems to have been effectually eliminated from the case.

It is also insisted that the court erred in admitting the testimony of Dr. Francis L. Wadsworth, the physician and surgeon who attended the plaintiff during the illness conse-

quent upon his injury, as to the value of his professional services. Each count of the declaration alleges that the plaintiff, by reason of his injury, "was compelled to and did lay out and expend divers large sums of money in and about being cured of his said injuries," but there is no averment of his having incurred any liabilities in that behalf other than those which he has paid. The testimony of said physician and surgeon was taken by deposition, and in his deposition, to the question, "Will you state what in your opinion was the value of your services rendered in that particular case to the plaintiff?" answered, "I think a year ago last January, when I discontinued my visits, if that was the time, I estimated that service at $250." Also to the question, "In your opinion is that a fair and reasonable charge?" he answered, "Yes sir. It is certainly not an overcharge." When the deposition was offered in evidence, the counsel for the defendant objected to the first of these questions on the specific ground "that no sufficient foundation has been laid to show that the physician is entitled to recover anything." This objection was overruled and exception was taken by defendant's counsel.

On this state of the record we are not called upon to determine whether this evidence ought not to have been excluded if the objection now made, viz, that it tended to establish an element of special damage not alleged in the declaration, had been interposed at the trial. As that objection was not then made, it can not be insisted upon now. But it is difficult to see how the court, at the time said evidence was offered, could have declared it immaterial and have excluded it on that ground. The plaintiff was then seeking to make out his case in chief, and to establish his allegation that he was compelled to and did pay out and expend divers large sums of money in and about being cured of his injuries, it was not sufficient for him to prove merely that he had paid a certain physician's bill, but he was required also to show that, by reason of his injuries, he had necessarily incurred said bill

and that it was reasonable. The evidence in question mani-festly tended to prove the latter of these facts, and when it was offered the court could not foresee, nor was it bound to presume, that proof of the payment of said bill would not also be furnished. If the specific objection had been interposed that proof of payment had not been made, possibly the court, before admitting evidence of the liability incurred and its amount and reasonableness, might have required of the plain-tiff's counsel a professional statement that he expected to follow up said evidence with proof of payment, but no such objection being made, the evidence was admitted, and properly. Upon failure by the plaintiff to prove that the physician's bill had been paid, the defendant's counsel should have moved to exclude all evidence in relation to said bill, or he should have asked the court to instruct the jury to disregard it, but the present contention that it was improperly admitted can not be sustained.

The special objection interposed to this evidence at the trial, however, is still insisted upon, which is, that, as it is not shown that Dr. Wadsworth was duly licensed to practice medicine and surgery under the statutes of this State, the evidence failed to show that the plaintiff was under any legal liability to pay him for his services. The only decision to which we are referred which lays down the rule here sought to be invoked is, *City of Chicago* v. *Honey*, 10 Ill. App. 535, and in that case it was held that, in a suit against a city for a per-sonal injury, the plaintiff, in order to recover for money paid for medical services, must show that the person rendering them was a duly licensed physician. The opinion in that case, though delivered by a very eminent judge, was criticised by the same court in *City of Chicago* v. *Wood*, 24 Ill. App. 40, while the writer of that opinion was still a member of said court. The view taken in the latter case was, that where the question of the license or qualification of a physician and sur-geon arises collaterally in a civil action between third parties,

the license or due qualification of the physician and surgeon under the statute will be presumed. Without fully committing ourselves to either of these views, it will be sufficient for this case to say, that this being a case between third parties and the question of the physician's qualifications arising only collaterally, the evidence in the present record is sufficient, *prima facie* at least, to establish the proper qualifications of the physician. He testifies that his profession is that of physician and surgeon; that he has practiced his said profession in Chicago for twenty-one and one-half years, and that he is a professor of the theory and practice of medicine in the Woman's Medical College at Chicago. It being shown that he is a physician and surgeon by profession, and that he has practiced his profession in this State for the length of time stated, the law, as it has stood ever since July 1, 1874, having required him to have a license in order to lawfully engage in said practice, it will be presumed, when the question arises in a collateral proceeding, that he has obeyed the law, and obtained the required license. If he were himself suing to recover for his professional services, he would doubtless be required to show affirmatively his compliance with the law, but between third persons the fact that he is and for a long time has been practicing as a physician and surgeon is sufficient to show, *prima facie,* that he is lawfully authorized so to do. See also *Williams v. The People,* 20 Ill. App. 89.

It is also contended that the trial court erred in refusing to allow the defendant's counsel, while cross-examining the plaintiff, to put to him questions as to the state of his health prior to the time his leg was amputated. Said amputation seems to have taken place about ten years prior to the injury of which he now complains. On his direct-examination no question was put to him in relation to the cause of said amputation nor in relation to his' health either before or after said amputation, up to the time said injury was inflicted. On cross-examination by the defendant's counsel he was asked

various questions as to when the amputation took place and its cause, and thereupon this question was asked him : "Were you afflicted with any other disease?" to which he answered, "At the time, (meaning the time of the injury), no sir." Also, in answer to a question put to him by the court, whether at the time of his injury he was afflicted with any disease at all, he answered, "None whatever, no sir." Defendant's counsel then proposed to ask him questions as to whether at any previous period he had been afflicted with any disease, and said questions being objected to, were excluded, and to that ruling an exception was preserved.

It seems clear that these questions were not within the scope of a proper cross-examination, and their exclusion may be justified on that ground. True that specific objection was not made, the objection being only a general one, still the court having excluded said questions, its decision must be sustained if any tenable objection to said questions in fact existed. Moreover, the manifest purpose of the questions asked was, to prove that, at a period anterior to said amputation, the plaintiff had some disease which, though dormant from the time of the amputation up to the date of his recent injury, may have then manifested itself again and been the real cause of some portion of the sufferings of which he now complains. We think the court decided correctly in holding that the matter thus sought to be investigated was too remote, and the inferences sought to be drawn from it too conjectural, to make it a proper basis for any action by the jury. Besides, the surgeons who assisted at the amputation were examined as witnesses, and testified fully as to the diseased condition of the plaintiff's knee which rendered amputation necessary. The defendant then had the benefit of all such inferences as were properly deducible from proof of the disease the plaintiff was then afflicted with, and apparently nothing would have been added by allowing the plaintiff to be examined on the same subject.

As to the remaining question, viz, that arising from the alleged misconduct of counsel for the plaintiff, we do not think that any error in the ruling of the court is so presented as to make it our duty to reverse the judgment on that ground. The bill of exceptions contains quite extended extracts from the addresses to the jury by the plaintiff's counsel, and these extracts embrace various remarks which we think were highly improper, but as to those to which the most serious objection exists, it does not appear that the court was called upon to make or did make any ruling. Several of the most objectionable paragraphs, as they appear in the bill of exceptions, are followed by the memorandum, "Excepted to by counsel for the defendant," but nothing is shown indicating that any objection was interposed, or that the court was called upon to make or did make any ruling to which the exception could apply. Some specific objections were made, but we are inclined to think that no ruling thereon is shown involving any error for which the judgment should be reversed.

It should be remarked that, from the very nature of the case, questions involving the conduct of counsel at the trial, and the character and scope of their arguments to the jury, must be left very largely to the sound discretion of the trial judge. He is present at the trial and has an opportunity of hearing the remarks of counsel on both sides, and is therefore able to determine much better than we can, whether anything has been said, or any incident has transpired during the trial which justifies the remarks in which counsel see fit to indulge. Many things may take place at the trial, and many things may be and usually are said on both sides of which the record affords us no intimation, and it is therefore very difficult for us to determine whether there was or was not proper occasion for a particular remark brought here as a mere extract from the address of one of the counsel. In clear cases this court will reverse, and frequently has reversed, judgments in consequence of improper remarks to the jury. But this is always

done with hesitation and reluctance, the court indulging, as it has a right to, in the presumption that the trial judge has performed his duty in restraining improper conduct on the part of counsel, and in preventing remarks to the jury not justified by the occasion.

The trial judge has the power to keep counsel within due bounds, and he should exercise that power promptly and impartially for the furtherance of justice, and he is not bound to wait until his attention is called to improper conduct of counsel by objection from the other side, but may interpose of his own motion and restrain counsel when plainly transgressing the rules which should govern them. And while discharging this duty with impartiality, he is not required to permit continual interruptions of counsel in their addresses to the jury under the guise of objections, but should see to it that each counsel has an opportunity to present his side of the case fairly, and in an orderly and consecutive manner. If counsel will persist, notwithstanding the admonitions of the court, in presenting improper and illegitimate considerations to the jury, it is within the power of the court, and it may become its duty, to wrest from them any improper advantage they may have thereby gained, by setting the verdict aside and awarding a new trial. But when the record comes to this court bearing with it the official sanction of the trial judge, very different questions are presented. Every reasonable presumption must be indulged in that the trial judge has performed his duty and has properly exercised the discretion vested in him, and that he has permitted no misconduct of counsel materially prejudicial to the opposite party to intervene, unless such misconduct and its prejudicial nature are clearly shown by the record.

After carefully examining the record, we have reached the conclusion that it contains no material error, and the judgment of the Appellate Court will therefore be affirmed.

*Judgment affirmed.*