## Edmond Lavis v. Wisconsin Central Railroad Company.

1. PLEADINGS—*Actions for Personal Injuries.*—In actions against carriers for injuries to passengers, it is necessary to allege the negligence in general terms only, and not to set out the facts constituting the neg-

ligence complained of. An allegation specifying the act constituting the injury, and alleging that it was negligently and carelessly done, is sufficient.

2. SAME—*Sufficiency of the Allegation of Negligence.*—In actions against carriers for injuries to passengers, a declaration which charges that the negligence consists of negligently running and operating its road and the cars propelled thereon, is sufficient.

3. SAME—*Statement of Ultimate Facts Sufficient.*—For the purpose of pleading, the ultimate fact to be proven need only be stated. The circumstances which tend to prove the ultimate fact are evidence; they have no place in the pleadings.

4. COMMON CARRIERS OF PASSENGERS—*Sufficiency of Proof in Actions Against.*—A passenger in a railroad car has only to show the accident, and that he received an injury, to make a *prima facie* case of negligence. When this is done, the burden of explaining is thrown upon the carrier.

5. SAME—*Rights of Passengers.*—A passenger has the right, while on his journey, to go from his seat to the water-closet of the car in which he is riding, and while so going, to be protected against being thrown out of the car through an open doorway.

6. NEGLIGENCE—*A Question of Fact.*—Negligence is a question of fact and not of law. It is the fact to be found. The acts of the party and the circumstances under which they are done, are not the facts to be found, but are merely evidence of it.

**Memorandum.**—Action for personal injuries. Error to the Superior Court of Cook County; the Hon. WILLIAM G. EWING, Judge, presiding. Heard in this court at the March term, 1894. Reversed and remanded. Opinion filed April 30, 1894.

The opinion states the case.

BLACK & FITZGERALD and W. S. JOHNSON, attorneys for plaintiff in error.

GREGORY, BOOTH & HARLAN, attorneys for defendant in error.

MR. PRESIDING JUSTICE SHEPARD DELIVERED THE OPINION OF THE COURT.

This was an action to recover for a personal injury to the plaintiff, who, on the evening of Sunday, October 28 1888, was being carried as a passenger, in a passenger train of the defendant, on its line of railroad, from Chicago to Austin, a suburb of Chicago.

638 APPELLATE COURTS OF ILLINOIS.

VOL. 54.] Lavis v. Wis. Cent. R. R. Co.

At a point on the railroad, a short distance before the station of Austin is reached, occurs a reverse curve in the road, described by witnesses as a sharp double curve, resembling an elongated letter S.

During the trip, and shortly after the last station before reaching Austin was passed, the plaintiff got up from his seat, which was near the center of the car, and started to walk to the water-closet at the rear end.

He testified that the rear door of the car seemed to be swinging as he approached it; that he was walking along easily, and that just as he got near the door and probably three feet from it, the car seemed to strike the curve, and gave a sudden lurch that threw him out of the open door and across the brake, breaking two of his ribs; that he fell to the platform and caught the railing, on the end of it, with both hands, and hung on for quite a distance, his feet hanging off the platform; that then a lurch of the car in the opposite direction threw him to the ground, and the wheels of the next car took off his left leg and right foot except the heel. He also testified that there had been several lurches of the car on the trip, but that the first one that occurred after he left his seat was the one that threw him out.

Mrs. McCormick was a passenger on the same train and sat in the car next behind that in which plaintiff rode. She testified that she sat next to the front window of the car, on a seat running lengthwise, and was looking through the window directly toward the car ahead of her out of which the plaintiff came; that the first she saw of the plaintiff was when he was five or six feet from the door and was coming toward it; that the door opened and he was pitched out head first, screaming as he went, his hands striking first the casing of the door and then the brake; that he struck the round top of the brake and fell; that the brakeman, who made announcement of stations, was standing with his arms on the door looking in the direction of the car out of which the plaintiff came; that he and her husband, who was sitting next to her, immediately ran out on the platform; that the brakeman came back into the car directly afterward, but gave no signal to

stop the train, though she asked him why he did not; that the speed was not slackened, and the train ran right along to the next station; that the train was jerking all the way, sometimes running smoothly and then giving a jerk, and that the plaintiff was thrown out at the time the car struck the first curve of the reverse or double curve, and that the train in her opinion was running at twenty-five or thirty miles an hour.

Jacob P. Hohmann, a policeman, testified that upon the arrival of the train at Austin he was informed of the accident, and at once went down the track to where he found the plaintiff lying between the double tracks with one foot hanging a little by the skin of the heel, and the other crushed; that about two hundred feet back and east of where the plaintiff was lying, he found his hat, and that it could be seen by marks on the gravel that the body had been dragged in the neighborhood of that distance; that the hat was right at the beginning or east end of the second curve which began at the west end of the first curve, and the body was at the west end of the second curve.

The train passed on from Austin to Harlem, which was the end of its trip, a distance not ascertainable from the abstract of the record, but from observation believed to be two or three miles from the place of the accident, and from there 'returned to Chicago.

An offer was made to prove by one Perley, that when the train reached its destination, the engineer procured from a neighboring saloon a billiard cue with which he plugged up some opening in the engine, which was objected to on the ground that there was no proper foundation therefor in the declaration, and the objection was sustained.

After some additional counts were filed, one of which was framed in order to fit the offered testimony of said Perley, the plaintiff, in the absence of said Perley, offered to prove by a witness, named Richardson, that upon the arrival of the train at Harlem he saw the engineer of the engine working about the engine and plugging it in some way with a billiard cue; and it was thereupon agreed by defendant's

640    APPELLATE COURTS OF ILLINOIS.

VOL. 54.]          Lavis v. Wis. Cent. R. R. Co.

counsel that Richardson would so testify, and that for the purposes of the motion to be made by defendant, he should be regarded as having so testified.

The plaintiff's case being then closed, the court, upon the defendant's motion, instructed the jury that "under the evidence" the plaintiff was not entitled to recover, and directed a verdict in favor of the defendant.

There are indications in the record of much controversy over the pleadings in the case. Whether the court ruled correctly upon such questions need not be discussed, inasmuch as the instruction that was given was equivalent to an instruction that, under the evidence, no recovery could be had upon any condition of pleadings. The original declaration and the first additional count thereof charged that the defendant by its servants in disregard, etc., " suddenly caused said train to be given a very violent jerk, by means whereof," etc. That was a sufficient allegation of negligence. The addition to that allegation of the words, " by means of the engine being started afresh, or by some other means unknown to plaintiff," added nothing to the allegation of negligence, and might have been treated as surplusage.

We are aware of an increasing tendency in actions of this kind to go into much greater detail in the declaration than is necessary in stating the manner or particulars of the alleged negligence.

The most approved precedents in cases of actions against carriers for injuries to passengers, allege the negligence in general terms only. Curtis v. Drinkwater, 2 Barn. & Adol. 169 (522 Eng. Com. Law, 79); Carpue v. London & Brighton Ry., 5 Adolph. & Ellis, N. S. 747 (48 E. C. L. 746); North Chicago Street Ry. Co. v. Cotton, 140 Ill. 486.

In this last cited case the first count of the declaration— a most general one—was approved in the following words:

" The circumstances of the injury do, in our opinion, give presumptive evidence of at least the specific negligence charged in the first count of the declaration. That charge, as we have seen, is very general, and consists of negligently running and operating its road, and the cars propelled thereon."

· In 2 Thompson on Negligence, 1247, it is said:

"It is not necessary to set out the facts constituting the negligence complained of. An allegation specifying the act constituting the injury, and alleging that it was negligently and carelessly done, is sufficient."

Tested by the above rules, the counts of the declaration referred to were sufficient to support the *prima facie* case made by the evidence.

Upon whom did the burden devolve of explaining what it was that occasioned the lurch or jerk that threw the plaintiff out of the car?

The law of this State, as declared in the case of G. & C. U. R. R. Co. v. Yarwood, 15 Ill. 468, and reiterated in the same entitled cause in 17 Ill. 509, and ever since adhered to, is that a passenger in a railroad car need only show the accident, and that he has received injury, to make a *prima facie* case of negligence against the carrier.

It was there said:

"By the law they (passenger carriers) are bound to the utmost diligence and care, and are liable for slight negligence. Proof that defendant (in the Supreme Court) was a passenger, the accident and the injury, make a *prima facie* case of negligence. This is done, and the burden of explaining is thrown upon the plaintiffs."

The case of North Chicago Street Ry. Co. v. Cotton, *supra*, contains the latest affirmation of the rule so stated, of which we are aware. It is there said:

"The evidence of the injury to the plaintiff and the circumstances under which it was inflicted, were, alone, sufficient to raise a presumption of negligence on the part of the defendant. * * * The general rule seems to be, that proof of an injury occurring as the proximate result of an act which, under ordinary circumstances, would not, if done with due care, have injured any one, is enough to make out a presumption of negligence. * * * In many cases it has been held, that, in a suit by a passenger against a carrier for an injury, the mere proof of the accident by which the injury was occasioned is sufficient to throw the burden

642     Appellate Courts of Illinois.

VOL. 54.]     Lavis v. Wis. Cent. R. R. Co.

on the carrier to show that he exercised due care; and there seems to be a very general concurrence of authority, that, where there was an absence of *vis major*, and it is shown that the injury happened from the abuse of agencies within the defendant's power, it will be inferred from the mere fact of the injury that the defendant acted negligently. See 2 Wharton on Negligence, Sec. 661, and cases cited in notes. In this State the doctrine as to presumptions above referred to, has been fully recognized in repeated decisions." And then follows a reference to R. R. Co. v. Yarwood, *supra*, and other decisions.

. In the case of Carpue v. London and Brighton Ry., *supra*, Lord Denman told the jury:

" It having been shown that the exclusive management, both of the machinery and the railway, was in the hands of the defendants, it was presumable that the accident arose from their want of care unless they gave some explanation of the cause by which it was produced; which explanation the plaintiff, not having the same means of knowledge, could not reasonably be expected to give."

A passenger has the right, while on his journey, to go from his seat to the water-closet of the car in which he is riding, and while so going, in care, to be protected against being thrown out through an open doorway, by conditions within the control of the carrier.

Whatever valid excuse may have existed for such a condition of things as resulted in his being thrown out, under such circumstances, must be shown by the carrier, and when shown it would make a question for the jury as to its sufficiency.

Negligence is a question of fact, and not of law. " Negligence is the fact to be found. The acts of the party, and the circumstances under which they were done, are not the fact to be found, but are merely evidence of that main fact." G. & C. U. R. R. Co. v. Yarwood, 17 Ill. *supra;* C. & N. W. R. R. Co. v. Trayes, 33 Ill. App. 307.

" For the purposes of pleading, the ultimate fact to be proven need only be stated. The circumstances which tend

to prove the ultimate fact can be used for the purposes of evidence, but they have no place in the pleadings." McAllister v. Kuhn, 96 U. S. 87.

The same principle is applied in the case of Indianapolis R. R. Co. v. Horst, 93 U. S. 291.

Whether the engine was out of repair, or the train was being run at too high a rate of speed around the curve, or whatever the cause of the accident, resulting from the operation of the train or the abuse of agencies within the defendant's power, the plaintiff observing due regard for his own safety, was something that the plaintiff need not have concerned himself about, either in his pleadings or in his proof of a *prima facie* case.

The relation of passenger and carrier, the accident, without fault of the plaintiff, by a sudden lurch or jerk of the car, and the injury, were shown, and a *prima facie* case of negligence, on the part of the defendant, was thereby made out, and it was error to take the case from the jury, by a peremptory instruction that "under the evidence" the plaintiff could not recover.

There are other elements which we do not, and probably should not, pass upon at this time, holding, as we do, that the cause must be remanded for another trial.

The judgment of the Superior Court will therefore be reversed and the cause remanded.