Agnes B. Garner, Appellee, v. Chicago Consolidated Traction Company et al., Appellants.

Gen. No. 14,577.

1. NEGLIGENCE—*when doctrine res ipsa loquitur applies. Held,* that an occurrence which consisted in the sudden blazing out of flame from the controller of a trolley car was of an unusual and unexpected character and such as to bring into application the doctrine *res ipsa loquitur.*

2. NEGLIGENCE—*effect of doctrine res ipsa loquitur.* Whenever the doctrine *res ipsa loquitur* is in play it must be kept continuously in mind that such doctrine merely raises a presumption which presumption yields readily to evidence.

3. NEGLIGENCE—*rule as to rebuttal of presumptive, where doctrine res ipsa loquitur applies.* The burden upon the defendants when plaintiff has made a case which entitles him to the application of the *res ipsa loquitur* doctrine, is not satisfactorily to account for the occurrence, but merely to rebut the inference that he has failed to use due care.

BAKER, J., dissenting.

Action in case for personal injuries. Appeal from the Circuit Court of Cook county; the Hon. MARCUS KAVANAGH, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1908. Reversed and remanded. Opinion filed June 15, 1909.

**Statement by the Court.** Appellee brought an action on the case against appellants for damages for personal injuries sustained by reason of defendants', appellants', negligence. A trial by jury resulted in a verdict for $3,500. Upon a *remittitur* of $1,500 the trial judge rendered judgment upon the verdict. De-

fendants are prosecuting this appeal from that judgment. Among other things they contend there is no evidence of negligence on their part.

On August 31, 1905, defendants were operating certain street car trolley lines in the city of Chicago. Among these was one known as the Evanston line and, about 2:30 o'clock in the afternoon of that day, plaintiff was a passenger on that line upon an open car running north on Evanston avenue to Devon avenue and on Devon avenue across Southport avenue. The car was operated through what is known as the K-11 type of controller, controlling two fifty horsepower motors which were under the car. The car had either a platform or vestibule in front. Both platform and vestibule are spoken of in the record, but no description of the car is furnished which enables us to determine which is correct. We shall, however, assume it was a platform. The controller stood in the front part of the platform and beside it, to the right, stood the motorman. Over the motorman's head and attached to the roof was an automatic circuit breaker which served to protect the motors against excessive currents of electricity and which broke the current automatically if the controller was "worked up too fast." At about Southport avenue, the controller suddenly blazed out or shot out flames. The occurrence is spoken of by some of the witnesses as an explosion. The flame from the controller shot out a foot or two into the front platform or vestibule of the car. One of plaintiff's witnesses, O'Neill, on his cross-examination, said the blaze was almost instantaneous. There was a flash, he said, and then it was all over. Another witness, a policeman, who stood beside the controller, to the left, testified that, "There was a gush of flames came out of the controller box" which "simply singed my clothes." He could not tell how far out it extended. He said: "It was not a big flame; it was simply a gush of flame came out there." The passengers in the car, a number of whom were women and children, seem to have become panic stricken and rushed off the car pell-

mell. Some fell down and others stepped or fell upon them. Plaintiff claims to have been injured in the scramble of the passengers while getting off.

JOHN A. ROSE and FRANK L. KRIETE, for appellants; W. W. GURLEY, of counsel.

JACOB C. LEBOSKY, for appellee.

MR. JUSTICE CHYTRAUS delivered the opinion of the court.

We are of opinion that the occurrence here involved was of such nature that it affords *prima facie* evidence of negligence on the part of defendants. The *res ipsa loquitur* doctrine is applicable. The sudden blazing out of the flame from the controller was an unusual and unexpected event and out of the ordinary run of things. The controller, in connection with which the casualty happened, was an appliance or a thing in the exclusive possession and control of, and exclusively managed by, the defendants. Between the defendants and the plaintiff there was a contractual relation, relevant in this connection. So far as one can see, who does not possess special knowledge concerning electrical appliances, the casualty was an unusual event and one which should not have happened if those having the control and management of the appliance in question had in no respect failed to use proper care. Therefore, the occurrence, conditions and circumstances, taken together, raised a presumption of negligence against the defendants. The presumption is one of fact, that is, an inference as to the existence of a fact drawn from the existence of some other fact. (Bouvier.) The inference here drawn, upon proof of the occurrence, conditions and circumstances, was that the defendants had failed to exercise the care demanded by the law. After that proof had been made it became necessary for the defendants to introduce evidence which, when taken in connection with the evidence of the occurrence, conditions and circumstances, would

overcome the inference that the defendants had failed to exercise due and ordinary care. Hart v. Washington Park Club, 157 Ill. 9; North Chicago St. Ry. Co. v. Cotton, 140 Ill. 486; Barnes v. Danville St. Ry. Co., 235 Ill. 566, 573. The burden upon the defendant in such case is not satisfactorily to account for the occurrence, but merely to rebut the inference that he had failed to use due care. Stearns v. Ontario Spinning Co., 184 Pa. 519.

Aside from proving the casualty and circumstances under which it occurred, plaintiff made no proof of negligence. Defendants produced experts to explain away or overcome the presumption. The plaintiff produced no witness who contradicted the testimony of the defendants' experts. There is, therefore, no conflict of testimony in respect to the existence or nonexistence of a cause of action. The only question in the record in this respect is: Do defendants' experts explain away the inference or presumption of negligence that arises, as stated, from the occurrence?

It appears that, prior to the shooting out of the flame from the controller, the overhead automatic circuit-breaker broke the electric circuit several times, but each time the motorman restored it. At such times, "there was quite a report," as the witness O'Neill puts it. Some of the witnesses, particularly the women witnesses, speak of these circuit breakings as explosions and, in their minds, these "explosions" evidently had some connection with the subsequent blazing out of the flame from the controller. These impressions of such connection were apparently conveyed to the jurors and obviously operated injuriously to the defendants. The experts testify that these circuit breakings are no warning of any impending danger. They, therefore, were utterly immaterial and in nowise served to prove negligence upon the theory that they had a tendency to warn the crew of something being wrong in connection with the controller. The evidence of the electrical experts is, in fact, to the effect that the shooting out of a flame from a con-

troller is a casualty that cannot ordinarily be foreseen or prevented. That being so, the presumption raised under the doctrine of *res ipsa loquitur* is rebutted in respect to such casualty. Whenever that doctrine is in play we must keep continuously in mind that it is merely a presumption which the doctrine raises, and a presumption such that it readily yields to evidence. A presumption which is not of the conclusive class can never withstand evidence, even though it be but the slightest.

It appears, from the testimony of the experts, that the controller is made up of a cylinder around which there is a metal casing. Between the cylinder and the casing there is a space. The operation of the controller, in the repeated openings and closings of the circuit, may create copper fumes forming a conductor from the controller cylinder to the controller case. When considerable of these fumes form in the space between the case and the cylinder there may be formed an electrical path, thereby "grounding" the case. This condition enables an arc to form between the cylinder and the case. The inside of the controller's case is covered with asbestos. The arc is very intense in heat. The asbestos does not burn but it will heat through. The intense heat will melt through the case of the controller and the arc will shoot out. Most of the time it burns a hole in the sheet iron case in front of the controller. Sometimes it shoots out between the top of the controller and the edge of the case where they are joined. The flame will shoot out in almost any direction. It cannot be foretold any more than you can foretell where lightning is going to strike. The formation of these copper fumes is a condition that no one can foresee. It is a condition that will happen and, as testified, all inspections and "theory inspections" possible to be made will not prevent the occurrence of such "blow-outs" of flame. There was, at the time in question, no device known in the building of cars and other appliances to prevent such an occurrence. Such an outburst of flame, it appears,

may be due to a number of different causes "over which the outside agency of motor men or any one else will have no control." "It may be due to some weakness in the controller which has all of a sudden developed, that no one knew anything about beforehand, and there is no possible way of finding out, even although the apparatus was most carefully inspected." Upon inspection of the controller after the outburst of the flame you would find nothing but a little hole in the case and no indication to show what had caused the outburst, except that the case would be a little blackened or scarred from the arc. In the majority of cases, says the expert Jenks, "there is no warning by reason of the machinery or in any other way" that such an occurrence would or could take place. Although the examinations of the expert witnesses, by the counsel for the respective parties, do not evidence a great familiarity with the subject, on the part of counsel, which is, perhaps, not to be expected, yet it appears quite clearly that such an occurrence, in connection with the controller, as the one here involved, is not fairly to be attributed to negligence. Furthermore, defendants' counsel asked the expert Jenks, substantially, whether, supposing the circuit upon a car is broken several times and supposing that one of the motors, there being two upon the car, is disconnected or cut out and, supposing further, that there is thereafter an explosion or blow-out of the controller, whether, at any time along the route or by an examination of the car before it started, such occurrence could have been foretold? And to such question an objection was interposed which the court, erroneously, as we think, sustained.. If this occurrence could have been foreseen neither by inspection before starting nor, by the crew, at any time along the route, then we fail to see where the negligence can be presumed, in respect to this occurrence.

The expert Volk, upon cross-examination, testified that "a blow-out of that kind may be caused by the controller not being in proper condition." This makes

the error occasioned by the objection interposed the more injurious.

The difference between the case at bar and the case of Chicago Union Traction Company v. Newmiller, 215 Ill. 383, is that in the case at bar evidence to rebut the inference or presumption of negligence is interposed while, in that case, none was interposed. It appears to us the presumption raised herein, under the doctrine of *res ipsa loquitur,* has been overcome.

We are of the opinion that the judgment must be reversed and we think the case should be remanded for another trial.

*Reversed and remanded.*

MR. JUSTICE BAKER dissenting.