Harry Chapman, Appellee, v. Chicago City Railway Company, Appellant.

Gen. No. 17,024.

TRIAL—*remarks of counsel in effect telling jury that prior decision of case was favorable.* Where counsel on examining the jurors remarks that the case had been tried before and that he had no objection to telling what the result was, but that the opposing counsel would probably object, and is stopped by the court, an objection being made, from making further remarks along that line, such action is reversible error, as it was in effect plainly telling the jury that the prior decision was favorable.

Chapman v. Chicago City Ry. Co., 172 Ill. App. 443.

Appeal from the Circuit Court of Cook county; the Hon. RICHARD S. TUTHILL, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1910. Reversed and remanded. Opinion filed October 3, 1912.

JOHN E. KEHOE and WATSON J. FERRY, for appellant; LEONARD A. BUSBY, of counsel.

A. W. FULTON and ROBERT S. COOK, for appellee.

MR. PRESIDING JUSTICE GRIDLEY delivered the opinion of the court.

This is an appeal from a judgment of the Circuit Court of Cook county in favor of Harry Chapman, appellee, against Chicago City Railway Company, appellant, for $5,000, for damages for personal injuries sustained by appellee while attempting to board a car of a cable train operated by appellant. The judgment was rendered after a second trial before a jury. At the first trial the jury assessed appellee's damages in the sum of $4,000, but the court granted a new trial.

The facts are, briefly stated, as follows: Appellee was employed by the Woodstock Canning Company at $2.50 per day. On the morning of the accident, after drawing the amount of his wages for the previous week, he decided not to work that day, and, after making a call upon his mother, met a friend at a restaurant, corner of Halsted and Madison streets in Chicago, where they had dinner. After dinner they passed the afternoon playing cards and drinking beer. Appellee testified that during this time he had about four glasses of beer but "didn't have any whiskey or anything of that sort." He further testified that about 5:30 o'clock he left his friend and walked east on Madison street to State street, a distance of about a mile; that he did not stop anywhere; that after reaching State street he walked north to Randolph street, then back on State street to Monroe street, then east to Wabash avenue; that he was "taking in the sights," but that

he did not stop anywhere; that when he reached the corner of Monroe street and Wabash avenue he went about fifty feet south of the crossing and stood on the west side of the car tracks waiting for a car going south; that it was cold and that there was "sleet and ice and one thing and another on the street;" that it was then about seven o'clock in the evening; that after waiting a while a cable train, consisting of an open grip car with two cars attached, came along going south and he "motioned for the car;" that the grip-man "slacked up, just slowed down you might say to invite me to get on the car;" that he stepped on the step of the front platform of the car following the grip car, which platform was crowded with passengers; that just as he stepped on the car it gave a "sudden lurch, * * * the crowd pushed me back, * * * I lost my balance, * * * I fell kind of on my back, turned over on my side, * * * put my hand under the projection of the wheels—the fender I guess, * * * the wheels of the car did not run onto my hand. It was this board that simply crushed and tore my fingers." The testimony of appellee is not clear as to just how the accident happened, and only one other witness, named Woodward, testified as to seeing the accident, and he says that as he "came around the corner I seen someone falling from the car, * * * he fell flat on the street, * * * he sprawled, with his arms extended in both ways. The car was moving at the time." Appellee was taken first into a saloon, then to a drug store, then to a doctor's office where his hand was dressed, and then to the Samaritan hospital in a police ambulance. On the following morning a surgeon amputated the third and fourth fingers and a portion of the index finger of appellee's right hand. Appellee resumed work at the canning company in the month of July following and at the time of the trial testified he was receiving fifteen dollars a week, figuring five days and one-half to the week. Appellee further testified that at the time of the accident he was not intoxicated,

but the witness Woodward, who picked him up after the cable train had passed on, testified that he "could smell whiskey on his breath," and several other witnesses, who saw appellee shortly after the accident, including the physician who first attended him and dressed his hand, all testified he was in an intoxicated condition.

Counsel for appellant contend that the evidence does not show that appellant was guilty of negligence, that the entire testimony of appellee as to the manner in which he says the accident occurred is inherently improbable and descriptive of an accident physically impossible of occurrence, that the testimony of other witnesses as to statements made to them by appellee shortly after the accident, together with other facts in evidence, indicate that appellee was himself guilty of negligence in that he attempted to board one of the cars of the cable train while it was moving, missed his hold and fell, that the verdict is excessive and that counsel for appellee was guilty of misconduct at the trial prejudicial to appellant.

After a careful examination of the abstract of record and of the briefs and arguments of the respective counsel, we have reached the conclusion that the judgment of $5,000 in this case should be reversed and the cause remanded.

After twelve jurors had been placed in the box and sworn to answer questions touching their qualifications to serve as jurors, counsel for appellee proceeded to examine them, and while so engaged the following occurred:

"Q. Well, now, in this case another matter will develop, and that is this case was tried before, about last December or January, was submitted to a jury and tried. I have no objection to telling you what the result of that trial was. I presume Mr. Kehoe will object to telling you, but let me say this—

(Counsel for appellant here objected to the statement.)

The Court: Very improper remark to make."

After some remarks by counsel for appellee counsel for appellant said:

"In view of the nature of the remark, I desire to take an exception to the statement of counsel on the ground that your Honor in sustaining the objection cannot correct the harm that is done by such a remark."

This objection was sustained, and thereupon counsel for appellant moved the court to withdraw a juror and discharge the panel from further service for the reason that the statement of counsel was equivalent to saying to the veniremen that a previous jury had rendered a verdict favorable to the plaintiff below, with which the plaintiff was satisfied. Counsel for appellant also moved the court to direct its clerk to call another panel of veniremen who had not heard the remarks of counsel for the plaintiff, but this motion was overruled and an exception preserved. We think that under the facts in this case the remarks of counsel for plaintiff constituted error prejudicial to appellant. In Springfield, etc. Ry. Co. v. Bell, 134 Ill. App. 426, counsel for the plaintiff, in his closing address to the jury, used the following language:

"If this woman is lying to you she has hoodwinked all of her friends; she has hoodwinked the Clarks; she has hoodwinked the doctor and her attorneys; she has hoodwinked this jury and she has hoodwinked another jury before you."

In reversing the judgment in favor of the plaintiff, the court said, page 427:

"This was in effect telling the jury plainly that the verdict upon the former trial was in appellee's favor * * * It is seldom that judgments have to be reversed upon this ground alone and courts of review take such action with hesitation and reluctance, yet in clear cases they will and should reverse, because of improper remarks to the jury." (Citing North Chicago, etc. Ry. Co. v. Cotton, 140 Ill. 486, 502; I. C. R. R. Co. v. Seitz, 111 Ill. App. 242.)

The judgment of the Circuit Court is reversed and the cause remanded.

*Reversed and remanded.*