Kenneth Kerwin, Appellee, v. Stonington Elevator Company, Appellant.

Gen. No. 9,042.

January term, 1937. Heard in this court at the Opinion filed April 16, 1937. Rehearing denied October 5, 1937.

MONROE & ALLEN, of Decatur, for appellant.

HERSHEY & BLISS, of Taylorville, for appellee.

MR. JUSTICE DAVIS delivered the opinion of the court.

Kenneth Kerwin, plaintiff appellee, recovered a judgment in the circuit court of Christian county against the Stonington Elevator Company, a corporation, defendant appellant, for the sum of $3,500 on account of damages sustained by him when delivering corn at said elevator and this appeal is from that judgment.

The evidence discloses that this elevator was in charge of Emmett Wilkinson. The grain was weighed at the office a short distance from the elevator. There was a long driveway through the elevator, which was about nine feet wide, and there were eight dumps in this driveway. The person delivering grain would drive up an incline onto the driveway and proceed to the dump at which the grain was to be unloaded.

The plaintiff lived on a farm with his father, for whom he worked, located about three miles west of Stonington. On November 18, 1933, he went to the elevator with a load of corn belonging to his father, driving a team of mules. He arrived there about 12:15 p. m. and Emmett Wilkinson weighed the corn and Cletus Wilkinson, a son of the manager, told plaintiff to dump the corn in dump number five, and in driving there plaintiff had to drive over dump number four. As the front right wheel of his wagon hit the dump log on this dump number four it went down and plaintiff was thrown off the wagon against the side of the elevator. As the wheel went down the end of the log flew up and hit the right mule on the side and the team ran away. The wagon ran over his right arm and he was severely injured. He was in the hospital eight weeks, and later went back and was there five weeks and three days.

This number four dump was made of two timbers about 10 inches wide and 10 or 11 feet long placed in the driveway about the width of two wagon wheels apart. The logs go longitudinally up the driveway and a beam goes through the logs about the center so that they can rock to dump the load. There is a bar at the rear end of the logs with blocks attached to support the logs and a lever attached, when pulled back, untriggers the logs and the rear end goes down to unload wagons. This bar was made of a board 2 x 8″ across under the logs with a block for it to catch on each log. When the logs are fastened to hold up a wagon the end of the log rests on these blocks which stand up. The lever is fastened to this cross timber, with a wedge in back of the lever to hold it forward. When the lever is pulled back it untriggers the two logs and lets the ends go down to unload the wagon. The back goes down and the front up. When the lever is thrown forward the two blocks come up under the

wagon and hold the logs up. Then the wedge is used so that the lever cannot go back. It is locked in a forward position. Both of the logs drop into a trench at their forward ends.

No evidence of any specific negligence was offered by the plaintiff. There was evidence of some experiments that were conducted a short time before the trial of the case. The evidence discloses that the witnesses pulled the lever back and forth and pushed the logs down and untriggered them and let them fall. That it was possible to lock the dump and the right log would not be locked. At the time the lever was forward in the locked position and when the wedge was behind the lever, the right log would not be looked. The rear end would not raise quite enough to let the trip block under it. The block was against the end of the log. In the correct position it would have been under it. Both logs drop into a trench. A little dirt was thrown into that trench so as to keep the log from going down.

It is contended by appellant that there was no evidence of negligence offered by plaintiff and that he relied entirely upon the presumption raised by the doctrine of *res ipsa loquitur* and that this presumption has been overcome by actual evidence of usual, reasonable and customary care of a prudent elevator operator, which entirely overcomes and abates the presumption arising from the doctrine of *res ipsa loquitur*.

Plaintiff appellee insists that appellant somewhat erroneously misconceives the degree of care that is owed to plaintiff, not that it was the insurer of the safety of the plaintiff upon the premises but that it owed him a duty to exercise reasonable and ordinary care taking into consideration all of the circumstances. The premises in question and the driveway, with its numerous grain dumps and trap doors, was inherently a place of danger, and under these circumstances the duty of ordinary care owed to the plaintiff was about

equivalent of the highest kind of care, and it was of such degree that the jury was warranted in finding, after hearing all the evidence, that appellant had not exercised reasonable and ordinary care toward the plaintiff.

That there can be no question but that all elements present are necessary for a proper application of the doctrine of *res ipsa loquitur*. That appellant misconceives the rule in that it assumes that when any proof of reasonable care is offered the presumption or prima facie case is destroyed. That this has never been the rule under facts similar to those in this case.

The doctrine of *res ipsa loquitur* is that whenever a thing which produced an injury is shown to have been under the control and management of the defendant and the occurrence is such as in the ordinary course of events does not happen, if due care has been exercised, the fact of injury itself will be deemed to afford prima facie evidence to support a recovery in the absence of any explanation by the defendant tending to show that the injury was not due to his want of care. The doctrine of *res ipsa loquitur* applies under the facts in this case. This being true the evidence is sufficient to support a recovery in the absence of any explanation by appellant tending to show that the injury was not due to its want of care.

''The presumption raised by the doctrine of res ipsa loquitur does not require 'evidence to the contrary of equal weight' to overthrow it, for such presumption is not of itself evidence but arises as a rule of evidence and yields to any contrary proof. Presumptions are never indulged in against established facts. They are indulged in only to supply the place of facts, and as soon as any evidence is produced, which is contrary to the presumption which arose before the contrary proof was offered, the presumption vanishes entirely. The existence of the prima facie case is provisional and

does not change the burden of proof but only the burden of introducing further evidence. It means only that a determination of a fact shall be sufficient to justify a finding of a related fact in the absence of any evidence to the contrary. The only effect is to create the necessity of evidence to meet the prima facie case created, and which, if no proof to the contrary is offered, will prevail." *Bollenbach v. Bloomenthal*, 341 Ill. 539.

When such prima facie case is made it becomes necessary for the defendant to introduce evidence which, when taken in connection with the evidence of the occurrences, conditions and circumstances, would overcome the inference that the defendant had failed to exercise due and ordinary care. The burden upon the defendant in such case is not satisfactorily to account for the occurrence, but merely to rebut the inference that he has failed to use due care. *Garner v. Chicago Consolidated Traction Co.*, 150 Ill. App. 149; *Stearns v. Ontario Spinning Co.*, 184 Pa. 519, 39 Atl. 292.

Appellant offered evidence proving the construction of the elevator and of the dump and the methods of operation of elevators and of this particular dump. Mr. Wilkinson went to dump number four to see what had happened immediately after the plaintiff and Cletus Wilkinson came from the elevator on their way to the doctor's office. He found the right dump log was sticking straight up and down. The left-hand dump was up and solid. The lever was in place and the lock block behind it. He examined the trench or place in the floor where the right log lays when it is in position, and there was nothing in that trench. The left log of the dump was locked. The evidence discloses that the dump and the manner of locking the same were the usual and customary methods in use in elevators in that vicinity. There was nothing broken about the dump and the lever was fastened to the cross

beam the same as it had always been. The elevator had been in use that day before the accident.

We are of opinion that the presumption raised under the doctrine of *res ipsa loquitur* has been overcome, and for that reason the judgment of the circuit court of Christian county is reversed and the cause remanded for another trial.

*Reversed and remanded.*