PORFIRIO DIAZ, Plaintiff-Appellee, v. CHICAGO TRANSIT AUTHORITY, Defendant-Appellant (Robert Ward, Defendant-Appellee).

First District (5th Division)   No. 85—1569

Opinion filed August 26, 1988.

Raymond J. Smith, Brian M. Collins, Mary Patricia Burns, and John H. Wickert, all of Burke & Smith, Chartered, of Chicago, for appellant.

Orner & Wasserman, Ltd., of Chicago (Norton Wasserman and Loretta Griffin, of counsel), for appellee Robert Ward.

Robert F. Lisco, of Lisco and Field, of Chicago (Sidney Z. Karasik, of counsel), for appellee Porfirio Diaz.

JUSTICE PINCHAM delivered the opinion of the court:

This action was brought by Porfirio Diaz to recover damages for personal injuries he sustained when he was struck by a car driven by defendant Robert Ward. Diaz joined the Chicago Transit Authority (CTA) as a defendant, alleging, *inter alia*, that the CTA bus driver, Gant Kacija, was negligent in allowing Diaz to alight from the CTA bus at other than a normal bus stop and that as a result Diaz was struck by defendant Ward's car. The jury rendered a verdict for Diaz in the amount of $800,000, apportioning 78% of the negligence to Diaz, 20% of the negligence to the CTA and 2% of the negligence to Ward. On appeal, the CTA seeks reversal of the jury's verdict and judgment and a new trial on the issues of liability and damages. Alternatively, the CTA seeks a new trial only on the issue of damages, or an order of remittitur. We affirm.

The evidence at trial revealed the following. On August 24, 1980, Porfirio Diaz was a passenger on a westbound CTA bus on Archer Avenue driven by Gant Kacija. Diaz, who did not speak English, gestured to Kacija to stop the bus across from the Valley View Restaurant on Archer Avenue, rather than at the regular bus stop. Kacija complied, stopping the bus on an angle, approximately three feet from the regular bus stop and also three feet from the curb. Diaz got off the bus, stepped into the street area of Archer Avenue and crossed in front of the bus. Because the bus was stopped at an angle, it obstructed Diaz' view to his left and he could not see whether there was any oncoming westbound traffic. The bus driver indicated with a hand signal to Diaz that it was safe for him to continue across Archer Avenue. Diaz thereupon proceeded from in front of the bus to cross

Archer Avenue into the lane of oncoming traffic where he was struck by Ward's car. The CTA bus was stationary when Diaz was struck.

■■ ■ Defendant CTA first contends that there was no evidence that the CTA caused or contributed to Diaz' injuries and that the jury's verdict against the CTA should therefore be reversed as against the manifest weight of the evidence. A reviewing court will not reverse a jury's verdict unless it is contrary to the manifest weight of the evidence. (*Waterford v. Halloway* (1986), 142 Ill. App. 3d 668, 676, 491 N.E.2d 1199.) The trial record is reviewed by the reviewing court in a light most favorable to the appellee and a reviewing court may not, in drawing reasonable inferences from the facts, substitute its judgment for that of the jury. (*Frankenthal v. Grand Trunk Western R.R. Co.* (1983), 120 Ill. App. 3d 409, 458 N.E.2d 530.) A reviewing court must also consider that the jury saw, heard and determined the credibility of the witnesses and weighed the arguments of counsel, and that the trial court, in its sound discretion, denied the motion for a new trial. (*Berner v. Kielnik* (1983), 117 Ill. App. 3d 419, 453 N.E.2d 729.) The testimony revealed that the CTA bus driver stopped and allowed Diaz to alight from the bus three feet from the regular bus stop and also three feet from the curb and that Diaz waited in front of the bus until the CTA bus driver signalled for him to continue from in front of the bus to cross the street. We cannot say that the verdict of the jury, which observed the witnesses and heard their testimony, was against the manifest weight of the evidence.

■ The CTA next contends that after Diaz had been discharged from the bus onto the street, Diaz could have, and reasonably should have, walked safely to the curb instead of crossing in front of the bus across the street, and for this reason, the CTA contends, the jury's verdict against the CTA must be reversed. We disagree. Diaz chose to remain in the street and, with the bus driver's assistance, he attempted to cross Archer Avenue to the farther curb instead of the nearer curb. The jury after weighing this evidence accordingly apportioned 78% of the negligence which caused Diaz' injuries to Diaz. We find no basis upon which to disturb this apportionment by the jury.

■ We also find no merit in the CTA's next argument that the CTA should not be held liable because its conduct was not the proximate cause of Diaz' injuries. The CTA contends that its conduct did nothing more than create a condition which made Diaz' injury possible by the subsequent negligence of Ward, the driver of the car that struck Diaz, which was an unforeseen intervening cause of Diaz' injury. The CTA relies on the holding of *Fultz v. Myers* (1972), 5 Ill. App. 3d 230, 282 N.E.2d 488, that an act which merely creates a con-

dition that makes plaintiff's injury possible by the subsequent independent act of a third party is not the proximate cause of plaintiff's injury. This argument was advanced by the defendant in *Shanowat v. Checker Taxicab Co.* (1964), 48 Ill. App. 2d 81, 87, 198 N.E.2d 573, but was rejected by the court, which stated:

> "Defendant then argues that a carrier by taxicab is not liable unless the act or omission charged proximately causes an injury that is reasonably to be anticipated and that it is not sufficient for the act or omission to constitute merely a condition through which injury can be caused by an independent act of the injured person or of the third party. We believe that it was for the jury to determine, as a question of fact, whether the negligence of the taxi driver constituted only a condition by which the injuries were made possible or whether, because the subsequent independent act of Mrs. Sanchez in passing the halted cab was or could be found to be foreseeable, the driver's negligence was the proximate cause of the injuries."

Whether the conduct of the CTA bus driver was the proximate cause of Diaz' injury was a question of fact within the province of the jury and we will not disturb its determination.

■ The CTA's next argument for reversal is that the jury's apportionment of 20% of the negligence to the CTA and 2% to defendant Ward was against the manifest weight of the evidence. Again, questions of negligence, due care and proximate cause are ordinarily questions of fact for the jury's determination. Questions which cause reasonable men to arrive at different answers should not be determined as a matter of law. The debatable quality of issues such as negligence and proximate cause, and the fact that fair-minded men might reach different conclusions, emphasize the appropriateness and necessity of leaving such questions to the fact finders. The jury is the tribunal in our legal system which decides such issues. To withdraw such questions from the jury is to usurp its function. *Ney v. Yellow Cab Co.* (1954), 2 Ill. 2d 74, 84.

■ The CTA contends that "it is clear that defendant Ward was far more negligent than the CTA." The facts do not support this contention. Diaz waited in front of the CTA bus and did not continue across the street until the bus driver indicated to him that it was safe for him to do so. While the bus driver should have reasonably foreseen that Diaz could be struck by Ward's car, Ward, who did not know that Diaz was in front of the bus, had little reason to foresee that Diaz would emerge into the path of Ward's oncoming car. We find no inconsistency in the jury's apportionment of the negligence.

■ The CTA next contends that the trial court erred in giving the following jury instructions to the jury:

"At the time of the occurrence in question, the defendant, Chicago Transit Authority, was a common carrier.

A common carrier is not a guarantor of its passengers' safety but it has a duty to its passengers to use the highest degree of care consistent with the mode of conveyance used in the practical operation of its business as a common carrier by bus.

In selecting a place for the plaintiff to alight from its vehicle, it was the duty of the defendant, Chicago Transit Authority, as a common carrier, to exercise the highest degree of care consistent with the mode of conveyance used in the practical operation of its business as a common carrier by bus."

The CTA maintains that the giving of these instructions on the highest degree of care misinformed the jury of the duty of care the CTA owed Diaz, made it impossible for the CTA to receive a fair trial and, further, was not cured by the following jury instruction, which was also given by the court:

"The duty of the defendant, Chicago Transit Authority, to a passenger to exercise the highest degree of care is suspended from the time the passenger alights and after the passenger has had a reasonable opportunity to reach a place of reasonable safety."

There might be cause to suspect that the jury could possibly have been confused by these instructions, but in addition to the foregoing instructions, the trial judge gave the following instructions:

"After the plaintiff alighted from defendant's bus *and after he had a reasonable opportunity to reach a place of reasonable safety*, the duty of the defendant owed to the plaintiff was the same as owed to the general public, that is to exercise ordinary care.

That means it was the duty of the defendant to be free from negligence." (Emphasis added.)

In the trial court counsel for the CTA merely voiced a general objection to the jury instruction on the highest degree of care, stating:

"We object to that. We don't say it probably states the law as it exists in the State of Illinois today, and we offer an alternative instruction."

Counsel for the CTA never articulated the specific grounds for his objection and never tendered an alternative instruction. The CTA therefore is precluded on appeal from raising this new issue because it was

waived in the trial court. (*Shell Oil Co. v. Department of Revenue* (1983), 95 Ill. 2d 541, 550.) We conclude that the complained-of instructions to the jury by the trial court are not a basis for a new trial.

The CTA next contends that the trial court erred in permitting Diaz' treating physician, Dr. Wade Malhas, to express an expert opinion on the permanence of plaintiff's injuries and their effect on plaintiff's activities. The CTA maintains that plaintiff did not pretrial identify Dr. Malhas as an expert as required by Illinois Supreme Court Rule 220 (107 Ill. 2d R. 220).[1] The CTA contends that the testimony of Dr. Malhas was therefore improperly admitted.

■ ■ The identity of plaintiff's treating physician, Dr. Malhas, was disclosed to the CTA in plaintiff's answers to the CTA's first set of interrogatories. The CTA also listed Dr. Malhas as plaintiff's treating physician in its response to plaintiff's interrogatories. Plaintiff's counsel announced during a pretrial conference that he planned to call Dr. Malhas as an expert witness and that Dr. Malhas would also testify about his care and treatment of plaintiff. Plaintiff's counsel further disclosed to defendant, the CTA, that Dr. Malhas had made a recent examination of plaintiff and that at trial Dr. Malhas would also relate the results of that examination, which results were not then available. During the entire pendency of this case in the trial court, the CTA made no request to depose Dr. Malhas, even though the CTA subpoenaed Dr. Malhas' records. Although the trial judge granted permission to the CTA's counsel to depose Dr. Malhas, the trial judge limited the scope of the inquiry of Dr. Malhas to his most recent examination of plaintiff. Pursuant to the CTA's discovery request, the CTA had access to Dr. Malhas' prior medical report of plaintiff. The CTA contends that plaintiff was required to "re-disclose" that the previously identified treating physician, Dr. Malhas, would also be called by plaintiff at trial for his expert opinion on the permanence of plaintiff's injuries and their effect on plaintiff's activities, and that because plaintiff failed to redisclose Dr. Malhas as an expert witness the trial judge was required under Supreme Court Rule 220 to disqualify Dr. Malhas as an expert witness. We disagree.

The identity disclosure requirement of Supreme Court Rule 220(b) specifically refers to "an expert who is retained to render an opinion at trial." (107 Ill. 2d R. 220(b).) The purpose of Rule 220 is to eliminate the surprise which occurs when a person who is unrelated to the claim at issue at trial is presented as a expert at trial. The statute

---

[1] Illinois Supreme Court Rule 220 (107 Ill. 2d R. 220) is set forth in the appendix hereto.

governing discovery and depositions (Ill. Rev. Stat. 1983, ch. 110, par. 2—1003(c)) "was intended to facilitate trial preparation and the evaluation of claims *by eliminating the last-minute disclosure of experts on the courthouse steps or during the course of trial.*" (107 Ill. 2d R. 220, Committee Comments, at 353-54.) There is no element of surprise involved in the present case. For a substantial amount of time before trial the CTA was aware of the identity of Dr. Malhas and his role as plaintiff's treating physician. The CTA cannot realistically or convincingly contend that it could not reasonably anticipate that this identified prospective witness, Dr. Malhas, would testify as plaintiff's examining and treating physician and also as an expert witness.

Plaintiff was reexamined by Dr. Malhas on January 29, 1985. The CTA contends that as to this examination Dr. Malhas was retained solely to render his opinion at trial and that it was therefore improper to have permitted Dr. Malhas to express an opinion on plaintiff's disabilities and their cause and on the restrictions on plaintiff's activities and employability. The CTA does not dispute that it was aware that Dr. Malhas was plaintiff's attending physician, but maintains, rather, that his treatment of plaintiff was insufficient to render Dr. Malhas an expert. The CTA contends that plaintiff should have instead acquired the testimony of a nontreating expert. This argument is without merit. Plaintiff necessarily would have been required to disclose the identity of any nontreating physician retained to render an opinion at trial. We do not agree that plaintiff was required under Supreme Court Rule 220 to again disclose the identity of Dr. Malhas. The CTA concedes that "any treating physician is qualified and is permitted to render his or her expert opinions at trial." (*Hastings v. Abernathy Taxi Association, Inc.* (1973), 16 Ill. App. 3d 671, 306 N.E.2d 498.) By definition, a treating physician is not retained solely for the purpose of rendering an opinion at trial, but first and foremost to treat the patient. The treating physician's expert testimony is thus incidental to treatment of the patient.

We further find no merit in the CTA's contention that a party must answer interrogatories not only when identifying all persons having knowledge of the facts and circumstances surrounding the occurrence, but that a party must also reidentify those persons among them who will or may render an expert opinion at trial. An expert is not precluded from testifying on matters about which he is not questioned during pretrial discovery. (Supreme Court Rule 220(d), 107 Ill. 2d R. 220(d).) The CTA chose not to depose Dr. Malhas after plaintiff identified him as a witness and the CTA did not ask whether there were any other physicians with knowledge of plaintiff's medical

condition. The trial court did not err in refusing to bar the expert testimony of Dr. Malhas. The trial court did not err in permitting the treating physician to express his expert opinion on the nature and extent of plaintiff's injuries. The CTA did not attempt to develop the medical aspects of plaintiff's injuries or challenge the extent of those injuries. There was no dispute about either the severity of plaintiff's injuries or their connection to the accident involved.

The CTA's claim of prejudice from Dr. Malhas' expert opinion is only a claim and one without substance. The contention that there may be a difference in preparation for cross-examination of a treating physician and a nontreating expert may be true, as the CTA contends, but where defendant was aware, as here, that no nontreating physician or nontreating expert was to be called as a witness by plaintiff, certainly defendant, the CTA, could reasonably be expected to anticipate that the treating physician would render an opinion incidental to his treatment and evaluation of plaintiff.

An expert is defined in *Broussard v. Huffman Manufacturing Co.* (1982), 108 Ill. App. 3d 356, 362, 438 N.E.2d 1217, as:

"One qualified by professional, scientific, technical training, or by practical experience, in regard to a particular subject, which imparts to him a special knowledge not shared by persons in the ordinary walks of life, may testify as an expert. His testimony as an expert *** must be on questions coming within the field of his training or experience."

That Dr. Malhas was a licensed physician, he was necessarily an expert and therefore qualified to testify as to the nature and extent of plaintiff's injuries. There appears to be no reason why his expertise must stop short of rendering an opinion on whether the injuries he treated were permanent or otherwise, or whether or not there was a causal connection between the given occurrence and plaintiff's condition of ill-being.

In sum, plaintiff properly disclosed the identity of plaintiff's treating physician, Dr. Malhas, prior to trial. Plaintiff did not intend to call any nontreating experts and therefore there were none to disclose pursuant to Supreme Court Rule 220. In keeping with the motion *in limine,* plaintiff disclosed prior to trial that plaintiff had been reexamined by his treating physician, Dr. Malhas, and that Dr. Malhas' trial testimony would be based in part upon the results of that reexamination. Under these circumstances and considering that the CTA had an opportunity to take a discovery deposition of Dr. Malhas, the trial judge did not err in permitting Dr. Malhas, based upon his personal knowledge, treatment and most recent examination

and evaluation of plaintiff, to render his expert opinion at trial on plaintiff's disabilities.

The CTA next contends that the trial court erred in allowing the plaintiff to introduce his unpaid medical bills into evidence without laying a proper foundation on the reasonableness of the charges. Counsel for the CTA, in argument on a motion *in limine* to bar the testimony of Dr. Malhas, stated that he would object to any opinion of Dr. Malhas on the reasonableness of medical charges which were general and not itemized. Now, on appeal, the CTA contends that evidence of plaintiff's medical expenses was improperly admitted because plaintiff's counsel failed to lay a proper foundation for the reasonableness of plaintiff's medical expenses.

In *Barreto v. City of Waukegan* (1985), 133 Ill. App. 3d 119, 478 N.E.2d 581, it states:

> "The law is settled in this State that in order to recover for medical and surgical expenses, it is necessary that two things be proved; first, that the claimant has paid or become liable to pay a specific amount, and second, that the charges made were reasonable charges for services of that nature. [Citation.] The prevailing rule is that the hospital or doctor's bill is *prima facie* reasonable and a proper foundation is laid when plaintiff testifies that the bill was for services rendered to him and that the bill has been paid." 133 Ill. App. 3d at 130.

One method of establishing the reasonableness of medical expenses is the testimony of parties having knowledge of the services rendered and the reasonableness of the charges. (*Flynn v. Cusentino* (1978), 59 Ill. App. 3d 262, 375 N.E.2d 43.) Dr. Malhas testified that he was familiar with the usual and customary charges for similar services in the community and that the other physicians' charges to plaintiff were reasonable. Counsel for the CTA objected to this line of questioning and in each instance informed the trial judge that his objections to plaintiff's questions were for the reason he stated in his argument on the motion *in limine*, that the bills were not itemized for specific services or drugs rendered to the plaintiff and were therefore too vague for Dr. Malhas to make a determination of reasonableness. At no time during the trial when plaintiff's counsel conducted the direct examination of Dr. Malhas did counsel for the CTA object that plaintiff's counsel had not laid a proper foundation according to the methods set out in either of the cases on which he now relies, *Barretto* or *Flynn*. It is axiomatic that contentions not raised or relied on in the trial court are waived and may not be raised for the first time on appeal. (*Shell Oil Co. v. Department of Revenue* (1983),

95 Ill. 2d 541, 550.) The CTA cannot object only to the vagueness of the medical bills at the trial level and then prevail on appeal on the basis of an error in the laying of the foundation for the reasonableness of the bills. We therefore need not address the merits of the CTA's contention that plaintiff's counsel failed to properly lay a foundation on the reasonableness of plaintiff's medical bills for their admission into evidence because the CTA waived the issue at trial.

The CTA lastly contends that the jury's verdict of $800,000 was so excessive that it should shock the judicial conscience. The CTA contends that the jury's verdict was the result of the introduction of evidence of plaintiff's inability to work, notwithstanding that plaintiff's counsel stated that plaintiff agreed to waive his claim for future lost wages. In a motion *in limine* plaintiff's counsel disclosed that plaintiff was an illegal alien at the time of the accident. The trial judge ruled that plaintiff's status as an illegal alien could not be referred to or relied upon by the defendants. Based upon this ruling, plaintiff's counsel, in his opening statement to the jury, stated that he intended to prove lost wages as a result of the accident. After opening statements, defendants submitted authority in support of their position that the illegal alien status of plaintiff could be a factor in the case. The trial court then reversed its prior decision on the motion *in limine* and ruled that plaintiff's status as an illegal alien was relevant to the issue of lost wages. The trial judge ruled that the defendants would be allowed to point out that plaintiff had no legal right to hold a job if the issue of plaintiff's future employability were raised. Plaintiff's counsel then announced that in view of the court's new ruling plaintiff would abandon his claim for future lost wages. The CTA contends that it was thereafter prejudiced because plaintiff's counsel later asked Dr. Malhas, "Doctor, do you have an opinion based upon a reasonable degree of medical and surgical certainty what is a reasonable prognosis for Mr. Diaz's possible work life for the rest of his life?" and Dr. Malhas gave his prognosis that plaintiff "would have a very limited job capacity unless he functions in an intellectual capacity that would not require his physical involvement in anything." Counsel for the CTA maintains on appeal that no objection was made at trial to this testimony because the CTA understood that the issue of plaintiff's illegal alien status as it pertained to his employability was open for examination when plaintiff later testified. As we previously stated, issues not raised or relied on in the trial court are considered waived on appeal.

We disagree with the CTA's contention that the jury's $800,000 verdict was "so excessive that it should shock the judicial

conscience." It is fundamental that the measure of damages in a personal injury case is a matter largely left to the discretion of the jury. (*Fedt v. Oak Lawn Lodge, Inc.* (1985), 132 Ill. App. 3d 1061, 1072, 478 N.E.2d 469.) The verdict was reduced by 78% because of plaintiff's contributory negligence. Plaintiff lost 60% of the use of his right arm and 50% of the use of his left leg. His condition is not susceptible to improvement and his condition will worsen as plaintiff ages. We cannot say as a matter of law that the verdict was excessive.

The judgment of the circuit court is affirmed.

Affirmed.

LORENZ, P.J., and SULLIVAN, J., concur.

## APPENDIX

Illinois Supreme Court Rule 220 (107 Ill. 2d R. 220) provides:
"Rule 220. Expert Witnesses
(a) Definitions.

(1) *Definition of expert witness.* An expert is a person who, because of education, training or experience, possesses knowledge of a specialized nature beyond that of the average person on a factual matter material to a claim or defense in pending litigation and who may be expected to render an opinion within his expertise at trial. He may be an employee of a party, a party, or an independent contractor.

(2) *Consulting expert.* A consulting expert is a person who possesses the same qualifications as an expert witness and who has been retained or specially employed in anticipation of litigation or preparation for trial but who is not to be called at trial to render opinions within his area of expertise.

(b) Disclosure.

(1) *Expert witness.* Where the testimony of experts is reasonably contemplated, the parties will act in good faith to seasonably:

(i) ascertain the identity of such witnesses, and

(ii) obtain from them the opinions upon which they may be requested to testify.

In order to insure fair and equitable preparation for trial by all parties the identity of an expert who is retained to render an opinion at trial on behalf of a party must be disclosed by that party either within 90 days *after the substance of the expert's opinion first becomes known to that party or his counsel or, if*

*the substance of the expert's opinion is then known, at the first pretrial conference in the case,* whichever is later. \*\*\* All dates set by the trial court shall be chosen to insure that discovery regarding such expert witnesses will be completed not later than 60 days before the date on which the trial court reasonably anticipates the trial will commence. Upon disclosure, the expert's opinion may be the subject of discovery as provided in paragraph (c) hereof. Failure to make the disclosure required by this rule or to comply with the discovery contemplated herein will result in disqualification of the expert as a witness.

(2) *Consulting expert.* Except as provided in paragraph (c)(5) hereof, a party need not disclose the identity of a consulting expert.

(c) Discovery.

(1) Upon interrogatory propounded for that purpose, the party retaining or employing an expert witness shall be required to state:

(i) the subject matter on which the expert is expected to testify;

(ii) his conclusions and opinions and the bases therefor; and

(iii) his qualifications.

\*\*\*

(3) A party shall be required to seasonably supplement his answers to interrogatories propounded under this rule as additional information becomes known to the party or his counsel.

\* \* \*

(d) Scope of Testimony. To the extent that the facts known or opinions held by an expert have been developed in discovery proceedings through interrogatories, depositions or requests to produce, his direct testimony at trial may not be inconsistent with or go beyond the fair scope of the facts known or opinions disclosed in such discovery proceedings. *However, he shall not be prevented from testifying as to facts or opinions on matters regarding which inquiry was not made in the discovery proceedings.*" (Emphasis added.)