Docket Nos. 97920, 97946 cons.–Agenda 17–November 2004.

JOYCE ARTHUR, Appellee, v. LAURIE CATOUR 
et al.
, Appellants.

Opinion filed July 21, 2005.

JUSTICE FREEMAN delivered the opinion of the court:

We are presented with the following certified question:

“Whether the Plaintiff who was charged $19,355.25 in medical bills for medical services related to her injuries can present that amount of bills as medical expenses in the case or, whether the Plaintiff shall be limited to presenting only $13,577.97 in medical bills to the jury because that is the amount that was paid by the Plaintiff and Blue Cross/Blue Shield, who was an insurance carrier for the Plaintiff and who paid the Plaintiff’s medical bills pursuant to insurance contracts at a substantially reduced rate with the medical providers and which the providers accepted as payment in full.”

We hold that a plaintiff may present to the jury the amount that the plaintiff’s health-care providers initially billed for services rendered.

BACKGROUND

Plaintiff, Joyce Arthur, brought a personal injury action in the circuit court of Henry County against defendants Laurie Catour and Stenzel Brothers Auction Services, Inc. Plaintiff alleged that on October 2, 1999, defendant Stenzel Brothers was conducting an auction on a farm that defendant Catour owned. Plaintiff further alleged that, while attending the auction, she stepped in a hole in Catour’s yard, fell, and was injured. Plaintiff alleged negligence on the part of each defendant and sought damages. Each defendant filed an answer denying negligence or liability.

Discovery ensued. In her answers to defendant Stenzel Brothers’ interrogatories, plaintiff stated that she fractured her leg just below the knee, which required surgery. Plaintiff also disclosed the categories of damages that she sought. Included in this list was: “Incurred medical to date–$19,314.07.” The following facts are undisputed. Through February 2002, plaintiff received services from various health-care providers valued at $19,355.25. Plaintiff had private, group health insurance with Blue Cross/Blue Shield (Blue Cross) through her husband’s employer.

Further, Blue Cross had contractual agreements with plaintiff’s health-care providers. Through this arrangement, many of the charges for health-care services rendered were discounted. Several examples are illustrative. Plaintiff received health-care services from Orthopedic Specialists valued at $4,308.70. However, based on their arrangement, Blue Cross actually paid the provider only $1,800.90 and plaintiff personally paid $375.10, for a total actual payment of only $2,176, which satisfied the bill. The provider discounted the remaining $2,132.70.

Likewise, plaintiff received health-care services from Genesis Medical Center valued at $7,425.49. However, $4,642.06 from Blue Cross and $522.51 from plaintiff, a total of $5,164.57, satisfied the bill. The provider discounted the remaining $2,260.92. Plaintiff received health-care services from Hammond-Henry Hospital valued at $5,299.56. However, $4,218.67 from Blue Cross and $59.64 from plaintiff, a total of $4,278.31, satisfied the bill. The provider discounted the remaining $1,021.25. Plaintiff received health-care services from St. Joseph Medical Center valued at $1,214.70. However, $877.90 from Blue Cross and $258.49 from plaintiff, a total of $1,136.39, satisfied the bill. The provider discounted the remaining $78.31. Plaintiff received health-care services from Heart Care Midwest valued at $117. However, $88.80 from Blue Cross satisfied the bill. The provider discounted the remaining $28.20. In this manner, plaintiff’s health-care providers discounted a total of $5,777.28; Blue Cross and plaintiff actually paid a total of only $13,577.97 to satisfy the $19,355.25 of billed health-care services rendered.

Defendants filed a motion for partial summary judgment, seeking to limit plaintiff’s claim for medical expenses to the amount paid rather than the amount billed. Granting defendants’ motion, the circuit court’s order stated in part:

“The court does not find that the collateral source rule applies to the present set of facts, and to allow the plaintiff to seek and recover $19,355.25 worth of medical damages when she was only charged for and became liable for $13,577.97 would only serve to punish the defendants punitively and provide a windfall for the plaintiff.”

The court ruled that “plaintiff will be limited to seeking compensatory damages not exceeding those actually paid to her medical providers.”

The circuit court certified the above-quoted legal question for immediate appeal. The appellate court allowed plaintiff’s application for leave to appeal pursuant to Supreme Court Rule 308 (155 Ill. 2d R. 308).

The appellate court, with one justice dissenting, reversed the circuit court’s entry of partial summary judgment for defendants. 345 Ill. App. 3d 804. The appellate court majority held that “plaintiff’s damages are not limited to the amount paid by her insurer, but may extend to the entire amount billed, provided those charges are reasonable expenses of necessary medical care.” 345 Ill. App. 3d at 808.

Presiding Justice Holdridge dissented, reasoning as follows: “Here, the amount 
received
 from the plaintiff’s insurance company in full payment of plaintiff’s past medical expenses–$13,577.97–will be fully protected by the collateral source rule. The additional $5,777.28 needs no such protection, as the plaintiff never incurred or became obligated for that expense.” (Emphasis in original.) 345 Ill. App. 3d at 809 (Holdridge, P.J., dissenting). He concluded: “I see no legal reason to allow the plaintiff to recover for expenses she never paid nor ever became obligated to pay as a result of the negligence of the defendant.” 345 Ill. App. 3d at 810 (Holdridge, P.J., dissenting).

Each defendant petitioned for leave to appeal. 177 Ill. 2d R. 315(a). We allowed each petition and consolidated the appeals. We granted the Illinois Trial Lawyers Association leave to submit an 
amicus curiae
 brief in support of plaintiff. We also granted the Illinois Association of Defense Trial Counsel leave to submit an 
amicus curiae
 brief in support of defendants. See 155 Ill. 2d R. 345. We now affirm the judgment of the appellate court and reverse the circuit court’s entry of partial summary judgment in favor of defendants.

ANALYSIS

We note at the outset our standard of review. In this case, we review the propriety of the appellate court’s answer to the certified question. The pertinent facts being undisputed, the certified question essentially asked whether the trial court’s grant of partial summary judgment in favor of defendants was legally correct. “If the facts are uncontroverted and the issue is the trial court’s application of the law to the facts, a court of review may determine the correctness of the ruling independently of the trial court’s judgment.” 
Norskog v. Pfiel
, 197 Ill. 2d 60, 70-71 (2001); see 
Woods v. Cole
, 181 Ill. 2d 512, 516 (1998) (stating rule that questions of law are reviewed 
de novo
); 
Adams v. Northern Illinois Gas Co.
, 211 Ill. 2d 32, 43 (2004) (stating rule that summary judgment rulings are reviewed 
de novo
). Accordingly, our review is 
de novo
.

“Under the collateral source rule, benefits received by the injured party from a source wholly independent of, and collateral to, the tortfeasor will not diminish damages otherwise recoverable from the tortfeasor.” 
Wilson v. The Hoffman Group, Inc.
, 131 Ill. 2d 308, 320 (1989); see 
Beaird v. Brown
, 58 Ill. App. 3d 18, 21 (1978), quoting 
Bireline v. Espenscheid
, 15 Ill. App. 3d 368, 370 (1973); 11 Ill. Jur. 
Personal Injury & Torts
 §5:62, at 354 (2002). Defendants do not dispute that the collateral source rule protects the $13,577.97 that Blue Cross paid and plaintiff’s health-care providers accepted as payment in full. Rather, defendants contend that the collateral source rule does not apply to the $5,777.28 difference between the amount billed and the amount paid. Plaintiff contends that the collateral source rule protects the entire $19,355.25 initially billed.

The collateral source rule protects collateral payments made to or benefits conferred on the plaintiff by denying the defendant any corresponding offset or credit. Such collateral benefits do not reduce the defendant’s tort liability, even though they reduce the plaintiff’s loss.

“They do not have the effect of reducing the recovery against the defendant. The injured party’s net loss may have been reduced correspondingly, and to the extent that the defendant is required to pay the total amount there may be a double compensation for a part of the plaintiff’s injury. But it is the position of the law that a benefit that is directed to the injured party should not be shifted so as to become a windfall for the tortfeasor.” Restatement (Second) of Torts §920A, Comment 
b
, at 514 (1979).

Accord 
Muranyi v. Turn Verein Frisch-Auf
, 308 Ill. App. 3d 213, 215 (1999); 2 D. Dobbs, Remedies §8.6(3), at 493 (2d ed. 1993). The rule operates to prevent the jury from learning anything about collateral income. 
Boden v. Crawford
, 196 Ill. App. 3d 71, 76 (1990). 

A situation in which courts frequently apply the collateral source rule is where the defendant seeks a reduction of damages because the plaintiff has received insurance benefits that partly or wholly indemnifies the plaintiff for the loss. 
Wilson
, 131 Ill. 2d at 320; 
Peterson v. Lou Bachrodt Chevrolet Co.
, 76 Ill. 2d 353, 362 (1979); accord 1 D. Dobbs, Remedies §3.8(1), at 373 (2d ed. 1993). The rule is well established that damages recovered by the plaintiff from the defendant are not decreased by the amount the plaintiff received from insurance proceeds, where the defendant did not contribute to the payment of the insurance premiums. 
Peterson
, 76 Ill. 2d at 362; see 
Biehler v. White Metal Rolling & Stamping Corp.
, 30 Ill. App. 3d 435, 444 (1975). “The justification for this rule is that the wrongdoer should not benefit from the expenditures made by the injured party or take advantage of contracts or other relations that may exist between the injured party and third persons.” 
Wilson
, 131 Ill. 2d at 320; see 11 Ill. Jur. 
Personal Injury & Torts
 §5:63 (2002). Also: “Calling attention to the fact that a plaintiff had such insurance can be prejudicial error because the jury may conclude that plaintiff sustained no damages for which he was entitled to recover if his medical bills were paid by insurance.” 
Biehler
, 30 Ill. App. 3d at 444; accord 
Boden
, 196 Ill. App. 3d at 76.

The dual nature of the collateral source rule is evident:

“The traditional approach is to treat [the collateral source rule] as having substantive and evidentiary components. The substantive component is a rule of damages. This component bars a defendant from reducing the plaintiff’s compensatory award by the amount the plaintiff received from the collateral source. The evidentiary component bars admission of evidence of the existence of the collateral source or the receipt of benefits. The concern here is that the trier of fact may use that evidence improperly to deny the plaintiff the full recovery to which he is entitled.” J. Fischer, Understanding Remedies §12(a), at 77 (1999).

Clearly, to the extent the evidentiary component of the collateral source rule implicates the substantive component of the rule, the evidentiary component applies only to prevent defendants from introducing evidence that a plaintiff’s losses have been compensated for, even in part, by insurance.

However, the collateral source rule is not an evidentiary rule that permits a defendant to limit a plaintiff’s ability to introduce evidence of the reasonable cost of health care necessitated by the defendant’s conduct.

“The usual [collateral source rule] case is one in which the plaintiff is injured by the defendant’s tort but suffers no actual medial expense loss because those expenses are paid for by the plaintiff’s own medical insurance or paid for as part of government benefits to veterans. In these cases the rule is quite firm that the defendant must pay for the reasonable value of medical services reasonably required even though the plaintiff’s own insurance has paid for such services.” 1 D. Dobbs, Remedies §3.8(1), at 373 (2d ed. 1993).

Accord 
Wilson
, 131 Ill. 2d at 320.

In the present case, plaintiff received health-care services and became liable for the resulting expenses upon receipt of those services, not when the final bill was eventually issued. Her liability was not somehow nonexistent merely because the providers submitted bills directly to her insurer. Indeed, it is not uncommon for an insurer, upon receipt of such bills, to deny coverage, leaving the patient/plaintiff personally liable for the balance. For example, the policy might have lapsed for nonpayment of premiums, or the policy may not cover some services, such as cosmetic or reconstructive surgery.

The medical expenses for which plaintiff was liable were covered in full by her health insurance. The bill was paid in part and the balance written off pursuant to a contractual arrangement between the insurer and the provider–a contract to which the plaintiff was not a party. Thus, the collateral source was the insurance company and not the so-called “discount.” To restate the obvious: plaintiff did not receive a discount from the provider. Rather, plaintiff received the benefit of her bargain with her insurance company–full coverage for incurred medical expenses.

This leads us to the certified question, which presents a question of proof rather than of entitlement, 
i.e.
, a question involving an evidentiary component of the collateral source rule and not a substantive rule of damages. Plaintiff, of course, is entitled to recover as compensatory damages the reasonable expense of necessary medical care resulting from defendants’ negligence, if proved. See 
Chicago City Ry. Co. v. Henry
, 218 Ill. 92, 95 (1905); accord 
Donk Bros. Coal & Coke Co. v. Thil
, 228 Ill. 233, 241-42 (1907); 
Department of Law Enforcement v. Willis
, 61 Ill. App. 3d 495, 498 (1978). The only relevant question in the litigation between plaintiff and defendants is the reasonable value of the services rendered. The certified question merely asks whether certain evidence is admissible in such cases.

The controlling principles are quite settled:

“In Illinois, the question of damages is peculiarly one of fact for the jury. 
Flynn v. Vancil
, 41 Ill. 2d 236, 240, 242 N.E.2d 237, 240 (1968). The rules regarding the admissibility of evidence of medical expenses and the burden of proving medical expenses are well established. In order to recover for medical expenses, the plaintiff must prove that he or she has paid or become liable to pay a medical bill, that he or she necessarily incurred the medical expenses because of injuries resulting from the defendant’s negligence, and that the charges were reasonable for services of that nature. See 
North Chicago Street Ry. Co. v. Cotton
, 140 Ill. 486, 498, 29 N.E. 899, 902 (1892); 
Wicks v. Cuneo-Henneberry Co.
, 319 Ill. 344, 349, 150 N.E. 276, 279 (1925).

When evidence is admitted, through testimony or otherwise, that a medical bill was for treatment rendered and that the bill has been paid, the bill is 
prima facie
 reasonable. 
Flynn v. Cusentino
, 59 Ill. App. 3d 262, 266, 375 N.E.2d 433, 436 (1978). A party seeking the admission into evidence of a bill that has not been paid can establish reasonableness by introducing the testimony of a person having knowledge of the services rendered and the usual and customary charges for such services. Once the witness is shown to possess the requisite knowledge, the reasonableness requirement necessary for admission is satisfied if the witness testifies that the bills are fair and reasonable. 
Diaz v. Chicago Transit Authority
, 174 Ill. App. 3d 396, 528 N.E.2d 398 (1988).

The 
prima facie
 reasonableness of a paid bill can be traced to the enduring principle that the free and voluntary payment of a charge for a service by a consumer is presumptive evidence of the reasonable or fair market value of that service. See 
Wicks
, 319 Ill. at 349, 150 N.E. at 279; 
Lanquist v. City of Chicago
, 200 Ill. 69, 73-74, 65 N.E. 681, 683 (1902). The premise is that a consumer will not willingly pay an unreasonable or unusual charge for a service. When a bill has been paid, there is little reason to suspect that the charge is collusive or speculative. The defendant may rebut the 
prima facie
 reasonableness of a medical expense by presenting proper evidence casting suspicion upon the transaction. It must be emphasized that offering a paid bill or the testimony of a knowledgeable witness that a bill is fair and reasonable merely satisfies the requirement to prove reasonableness. The proponent must also present evidence that the charges were necessarily incurred because of injuries caused by the defendant’s negligence. 
Cotton
, 140 Ill. at 498-99, 29 N.E. at 902. Only then have the evidentiary requirements for admission into evidence been satisfied. Moreover, it is axiomatic that merely satisfying the minimum requirements for the admission of a bill into evidence does not conclusively establish that the amount of the bill in its entirety must be awarded to the plaintiff. The admission of the bill into evidence simply allows the jury to 
consider
 whether to award none, part, or all of the bill as damages.” (Emphasis in original.) 
Baker v. Hutson
, 333 Ill. App. 3d 486, 493-94 (2002).

Accord 11 Ill. Jur. 
Personal Injury & Torts
 §5:22 (2002).

Applying these principles to the present case, plaintiff cannot make a 
prima facie
 case of reasonableness based on the bill alone, because she cannot truthfully testify that the total billed amount has been paid. Instead, she must establish the reasonable cost by other means–just as she would have to do if the services had not yet been rendered, 
e.g.
, in the case of required future surgery, or if the bill remained unpaid. Defendants, of course, are free to challenge plaintiff’s proof on cross-examination and to offer their own evidence pertaining to reasonableness of the charges.

Therefore, we answer the certified question as follows. Plaintiff may present to the jury the amount that her health-care providers initially billed for services rendered.

CONCLUSION

For the foregoing reasons, the judgment of the appellate court is affirmed; the partial summary judgment in favor of defendants, entered by the circuit court of Henry County, is reversed; and the cause is remanded to the circuit court for further proceedings.

Certified question answered;

appellate court affirmed;

circuit court reversed;

cause remanded.

CHIEF JUSTICE McMORROW, dissenting:

This appeal revolves around the following question certified by the trial court:

“Whether the plaintiff who was charged $19,355.25 in medical bills for medical services related to her injuries can present that amount of bills as medical expenses in the case or, whether the plaintiff shall be limited to presenting only $13,577.97 in medical bills to the jury because that is the amount that was paid by the plaintiff and Blue Cross/Blue Shield, who was an insurance carrier for the plaintiff and who paid the plaintiff’s medical bills pursuant to insurance contracts at a substantially reduced rate with the medical providers and which the providers accepted as payment in full.” 

In sum, the trial court asked whether an injured plaintiff could recover as compensatory damages the entire amount 
billed
 by health-care providers for medical services, or whether a plaintiff would be limited to recovering the discounted amount of medical expenses actually 
paid
 for the medical services by the plaintiff’s insurance carrier. The majority answers this certified question by holding that plaintiff may present to the jury the amount that her health-care providers initially billed for services rendered. Despite this holding, however, the majority finds that, because plaintiff’s health-care providers accepted a discounted amount from her insurance carrier as payment in full, plaintiff “cannot truthfully testify that the total billed amount has been paid.” Therefore, the majority concludes that plaintiff must establish the reasonable cost of the health-care services provided to her by employing unspecified “other means.” The majority also holds that defendants are free to challenge plaintiff’s proof on cross-examination and “to offer their own evidence pertaining to reasonableness of the charges.” For the reasons that follow, I respectfully dissent from the opinion of the majority.

As stated, in this case, plaintiff received services from various health-care providers billed in the amount of $19,355.25. However, plaintiff’s insurer–Blue Cross/Blue Shield (Blue Cross)–had contractual agreements with plaintiff’s health-care providers under which many of the health-care services rendered were discounted. Thus, although the health-care providers billed plaintiff for their services in an amount in excess of $19,000, Blue Cross actually paid them a discounted amount of $13,577.97 as a result of the various contracts. This discounted amount was accepted as payment in full by the health-care providers, and plaintiff was not responsible for the difference.

Prior to trial, defendants filed a motion for partial summary judgment, seeking to limit plaintiff’s claim for medical expenses to the amount actually 
paid 
to the health-care providers, rather than the amount billed to plaintiff. In opposition to the motion, plaintiff, invoking the protections of the collateral source rule, took the position that it was the amount of health-care expenses 
billed
, rather than the amount actually paid, that should be presented as the measure of damages to the jury.

The circuit court disagreed with plaintiff and granted defendants’ motion for partial summary judgment. In its written order, entered on June 18, 2002, the circuit court found that there was “no genuine issue as to whether the plaintiff or her insurance company was liable to any health care provider for more than $13,577.97.” The circuit court also found that the resolution of this question was governed by our decision in 
Peterson v. Lou Bachrodt Chevrolet Co.
, 76 Ill. 2d 353, 363 (1979), and quoted the following language from 
Peterson
 as controlling: “ ‘The purpose of compensatory tort damages is to compensate; it is not the purpose of such damages to punish defendants or bestow a windfall upon plaintiffs. The view that a windfall, if any is to be enjoyed, should go to the plaintiff borders too closely on approval of unwarranted punitive damages, and it is a view not espoused by our cases.’ ” Based upon its interpretation of our decision in 
Peterson
, the circuit court concluded that the collateral source rule did not require that plaintiff be allowed to present the billed amount of her medical expenses, and that “to allow the plaintiff to seek and recover $19,355.25 worth of medical damages when she was only charged for and became liable for $13,577.97 would only serve to punish the defendants punitively and provide a windfall for the plaintiff.”

Plaintiff thereafter filed a “Motion for Reconsideration or Clarification.” The circuit court denied this motion. However, finding that its order granting partial summary judgment to defendants involved a question of law as to which there is a substantial ground for difference of opinion, the circuit court certified the question presented in this appeal, pursuant to our Rule 308(a) (155 Ill. 2d R. 308(a)).

A majority of the appellate court reversed the judgment of the circuit court. The appellate court, stating that this case presented the question of “how to best harmonize the law of compensatory damages with the principles underlying the collateral source rule” (345 Ill. App. 3d at 808), held that the circuit court erred in limiting plaintiff’s damages to the amount actually paid to the health care providers by her insurer. Rather, the appellate court held that the rationale underlying the collateral source rule supported allowing plaintiff to claim the entire amount of medical expenses billed, as long as “those charges are reasonable expenses of necessary medical care.” 345 Ill. App. 3d at 808.

In dissent, Justice Holdridge noted the well-settled rule that in order to recover medical expenses, a plaintiff must prove that he or she has become liable to pay the amount claimed. Thus, “[i]n view of the fact that the plaintiff was never liable for the amount ‘discounted’ by the hospital,” the dissenting justice took the position that only the amount received from plaintiff’s insurance company as payment in full should be fully protected by the collateral source rule. 345 Ill. App. 3d at 809 (Holdridge, P.J., dissenting). Accordingly, the dissent concluded that the difference between the amount billed and the amount received needed no similar protection, as plaintiff never incurred or became obligated for that expense.

I am in agreement with the observation of the appellate court that this case squarely presents the question of “how to best harmonize the law of compensatory damages with the principles underlying the collateral source rule.” 345 Ill. App. 3d at 808. It is my belief that it is the tension between the concept of compensatory damages and the protections afforded to a plaintiff by the collateral source rule, as well as the restrictive interpretation this court has previously afforded the collateral source rule in 
Peterson
, that framed the issue in the circuit and appellate courts below, and which animated our grant of leave to appeal in this matter.

In its opinion, however, the majority avoids the questions presented by this appeal. The certified question is a straightforward one: can plaintiff seek compensation for the amount 
billed
 or the amount 
paid
 for medical services rendered? The majority gives an answer that amounts to no answer at all. The majority opinion crafts an unworkable analytical framework and arrives at a holding that represents a major change in trial practice. It is my position that such a significant alteration should be approached carefully, and only after this court has had the benefit of input from the bench and bar affected by the change. This has not occurred in the instant matter. The majority opinion compromises the traditional protections afforded by the collateral source rule and may necessitate a trial within a trial whenever the reasonableness of a plaintiff’s medical expenses are at issue. Because the majority’s analysis of the issues presented in this case is inadequate, and because the majority’s holding dramatically changes trial practice with respect to this issue, I cannot join in the majority opinion. I express no opinion on the ultimate disposition of the issue presented in this appeal.

It is well settled under our precedent that “[t]he purpose of compensatory tort damages is to compensate the plaintiff for his injuries, not to punish defendants or bestow a windfall upon plaintiffs.” 
Wilson v. The Hoffman Group, Inc.
, 131 Ill. 2d 308, 321 (1989); see also 
Best v. Taylor Machine Works
, 179 Ill. 2d 367, 406 (1997) (“There is universal agreement that the compensatory goal of tort law requires that an injured plaintiff be made whole”); Restatement (Second) of Torts §903, Comment 
a
 (1979) (“compensatory damages are designed to place [a plaintiff] in a position substantially equivalent in a pecuniary way to that which [plaintiff] would have occupied had no tort been committed”). In cases, such as that at bar, where a plaintiff seeks to recover compensatory damages for health-care expenses, it has long been held that a plaintiff must prove two things: “First, that the [plaintiff] has paid or become liable to pay a specific amount; and second, that the charges made were reasonable charges for services of that nature.” 
Wicks v. Cuneo-Henneberry Co.
, 319 Ill. 344, 349 (1925); see also 
Gill v. Foster
, 232 Ill. App. 3d 768, 790-91 (1992); 
Barreto v. City of Waukegan
, 133 Ill. App. 3d 119, 130 (1985); Illinois Pattern Jury Instructions, Civil, No. 30.06 (2005) (plaintiff is entitled to recover from a tortfeasor “[t]he reasonable expense of necessary medical care, treatment, and services received”); 11 Ill. Jur. 
Personal Injury & Torts
 §5:22 (2002).

Where a bill for health-care services has been paid, the payment of the bill constitutes 
prima facie
 evidence that the bill is reasonable. 
Wicks
, 319 Ill. at 349; M. Graham, Cleary & Graham’s Handbook of Illinois Evidence §803.22 (8th ed. 2004); 1 R. Hunter, Trial Handbook for Illinois Lawyers, Civil §21.38 (7th ed. 1997); 
cf
. 
Victory Memorial Hospital v. Rice
, 143 Ill. App. 3d 621, 624 (1986) (“evidence of the amount charged alone does not indicate reasonableness”). There are at least two rationales for this well-settled rule. First, the presumption that the amount of a paid bill is reasonable derives from the long-standing principle that the free and voluntary payment of a charge for a service by a consumer shows the reasonable or fair market value of that service. 
Wicks
, 319 Ill. at 349; see 
Lanquist v. City of Chicago
, 200 Ill. 69, 73-74 (1902) (reasonableness of value may be shown by sales “made in a free and open market, and where a fair opportunity for competition exists”). In other words, “[w]hen a bill has been paid, there is little reason to suspect that the charge is collusive or speculative.” 
Baker v. Hutson
, 333 Ill. App. 3d 486, 493-94 (2002); accord 
Spurr v. LaSalle
, 385 F.2d 322, 329 (7th Cir. 1967) (applying Illinois law, observing: “Common sense tells us it is most improbable that the insurer paid any medical expenses which could not have been shown to be reasonable in amount and necessary by reason of the injury. Actual payment of medical expense is prima facie evidence of reasonableness”).

Second, the rule that a paid bill creates a 
prima facie
 case as to the reasonableness of the amount paid is premised upon efficient judicial administration. The rule reflects “the desire to eliminate unnecessary cost to the parties and inconvenience to the public by having to call multiple witnesses.” 
Flynn v. Cusentino
, 59 Ill. App. 3d 262, 266 (1978); 11 Ill. Jur. 
Personal Injury & Torts
 §5:25 (2002). Indeed, “[t]o require otherwise would unnecessarily inconvenience both the parties, the court, and the public, by requiring doctors and other medical or hospital personnel to leave their normal duties to testify to a matter which should otherwise go undisputed.” 
Flynn
, 59 Ill. App. 3d at 266; 11 Ill. Jur. 
Personal Injury & Torts
 §5:25 (2002).

The compensatory function of tort law conflicts with the collateral source rule. See, 
e.g.
, M. Pollelle & B. Ottley, Illinois Tort Law §24.13, at 24–39 (3d ed. 2000) (the collateral source rule “runs counter to the compensatory damage principle of reimbursement for loss alone”); J. Branton, 
The Collateral Source Rule
, 18 St. Mary’s L.J. 883 (1987). “Under the collateral source rule, benefits received by the injured party from a source wholly independent of, and collateral to, the tortfeasor will not diminish damages otherwise recoverable from the tortfeasor.” 
Wilson v. The Hoffman Group, Inc.
, 131 Ill. 2d 308, 320 (1989); see also 
Bernier v. Burris
, 113 Ill. 2d 219, 242 (1986); 15 Ill. L. & Prac. 
Damages
 §40 (2000). The collateral source rule is premised upon the public policy that a benefit that is directed to the injured party should not be shifted so as to become a windfall to the tortfeasor: “the wrongdoer should not benefit from the expenditures made by the injured party or take advantage of contracts or other relations that may exist between the injured party and third persons.” 
Wilson
, 131 Ill. 2d at 320. In other words, the rule holds that any collateral benefits that an injured party receives do not reduce the defendant’s liability in tort, even though they decrease the plaintiff’s loss.

As stated, a plaintiff is considered to be fully compensated when he or she is restored to the position occupied before the tort occurred. Generally, if a plaintiff receives compensation from a third party not connected to the defendant, those benefits are used to reduce the tortfeasor’s total damages. 22 Am. Jur. 2d 
Damages
 §566 (1988). The collateral source rule changes this general principle of compensatory damages to the extent that the amount of the tortfeasor’s liability is not reduced by the compensation received by plaintiff from other sources.

The majority correctly observes that the collateral source rule is often applied where a defendant seeks to reduce damages because the plaintiff has received insurance benefits that in part or in whole indemnify the plaintiff for the loss. Generally, damages recovered by the plaintiff from the defendant are not decreased by the amount the plaintiff received from insurance proceeds, so long as the defendant did not contribute to the payment of the insurance premiums:

“If the plaintiff was himself responsible for the benefit, as by maintaining his own insurance or by making advantageous employment arrangements, the law allows him to keep it for himself. If the benefit was a gift to the plaintiff from a third party or established for him by law, he should not be deprived of the advantage that it confers. The law does not differentiate between the nature of the benefits, so long as they did not come from the defendant or a person acting for him.” Restatement (Second) of Torts §920A, Comment 
b
, at 514 (1979).

The majority opinion, however, fails to acknowledge that Illinois departs from other jurisdictions with respect to application of the collateral source rule. In its opinion, the majority omits any discussion with respect to our decision in 
Peterson v. Lou Bachrodt Chevrolet Co.
, 76 Ill. 2d 353 (1979), wherein this court limited the operation of the collateral source rule. See 
Muranyi v. Turn Verein Frisch-Auf
, 308 Ill. App. 3d 213, 216 (1999) (
Peterson
 “rejected th[e] unconditional version of the collateral source rule”); see also 11 Ill. Jur. 
Personal Injury & Torts
 §5:62 (2002); M. Pollelle & B. Ottley, Illinois Tort Law §24.13 (3d ed. 2000).

In 
Peterson
, this court denied the plaintiff recovery for the value of medical services a charitable hospital had rendered to his son free of charge, reasoning that the policy behind the collateral source rule is not applicable “if the plaintiff has
 incurred no expense, obligation, or liability 
in obtaining the services for which he seeks compensation.” 
Peterson
, 76 Ill. 2d at 362. In arriving at this holding, this court stated that “[w]e refuse to join those courts which, without consideration of the facts of each case, blindly adhere to ‘the collateral source rule, permitting the plaintiff to exceed compensatory limits in the interest of insuring an impact upon the defendant.’ ” 
Peterson
, 76 Ill. 2d at 363, quoting Note, 
Unreason in the Law of Damages: The Collateral Source Rule
, 77 Harv. L. Rev. 741, 742 (1964). The 
Peterson
 court highlighted the tension between the concept of compensatory damages and the collateral source rule, observing that the purpose of compensatory damages is to “compensate,” and not “to punish defendants or bestow a windfall upon plaintiffs.” 
Peterson
, 76 Ill. 2d at 363. Accordingly, this court held that “[t]he view that a windfall, if any is to be enjoyed, should go to the plaintiff [citation] borders too closely on approval of unwarranted punitive damages, and it is a view not espoused by our cases.” 
Peterson
, 76 Ill. 2d at 363.

With our decision in 
Peterson
, Illinois became one of the few jurisdictions to apply a limited version of the collateral source rule to exclude gratuities from the operation of the rule. See 2 D. Dobbs, Remedies §8.6(3), at 494 (2d ed. 1993) (recognizing Illinois as one of a few jurisdictions omitting gratuities from the collateral source rule and noting that in this view “the collateral source rule applies only to benefits the plaintiff has obtained by purchase or his own efforts”); 4 F. Harper, F. James & O. Gray, Torts §25.9, at 561 n.8 (2d ed. 1986) (listing Illinois as one of a few jurisdictions excluding gratuities from the collateral source rule); 22 Am. Jur. 2d 
Damages
 §397, at 359-60 (2003) (same).

It is against the backdrop of our restrictive interpretation of the collateral source rule that the trial court certified the question presented in the instant appeal. In its order granting partial summary judgment to defendants, the circuit court found our decision in 
Peterson
 to be controlling, and quoted our holding from that decision that the purpose of compensatory damages is to compensate a plaintiff and not to punish defendants or bestow a windfall upon a plaintiff. It was based upon this language in 
Peterson
 that the circuit court held that because plaintiff in the matter at bar was only liable for the discounted amount of her medical expenses, this discounted amount was the appropriate measure of her medical expense damages. The record further reveals that it was on this issue that the circuit court found that there was substantial ground for difference of opinion, and certified the question for appeal.

Upon reviewing the judgment of the circuit court, the appellate court addressed two issues. First, the appellate court majority held that plaintiff was entitled to recover medical expense damages in an amount greater than the amount she was obligated to pay, and any additional amount would not be a “windfall” because the difference is a benefit of plaintiff’s contract with her insurer, not one bestowed upon her by defendants. 345 Ill. App. 3d at 806. Second, a majority of the appellate court panel rejected defendants’ assertion that the difference between the amount charged and the amount paid is “illusory” and not subject to the collateral source rule. The appellate majority held that limiting plaintiff’s damages to the amount actually paid as a result of her insurance contract violated the purpose of the collateral source rule because such a limitation would confer a significant benefit of plaintiff’s insurance coverage upon defendants. 345 Ill. App. 3d at 807.

Before this court, the parties engage in extensive argument with respect to the relationship between compensatory damages and the collateral source rule, as well as the extent of the limitation of the collateral source rule in our jurisdiction. According to defendants, although the collateral source rule affords protection to medical payments made under plaintiff’s insurance policy, this protection is not without limits. Defendants contend that because the amount of plaintiff’s medical expenses is reduced by the amount of the discount, and because neither plaintiff nor anyone else has liability for the discounted amount, the collateral source rule should not apply to protect the discounted amount. According to defendants, under circumstances such as those at bar, application of the collateral source rule serves to protect an unjustified windfall to plaintiff. In addition, defendants argue that allowing plaintiff to recover a compensatory award in excess of the medical expenses actually incurred is similar to imposing an impermissible penalty upon them.

In response, plaintiff contends that the usual rule that a paid bill is 
prima facie
 evidence of the reasonableness of the expenses does not apply here because the collateral source rule prevents the jury from learning any information with respect to plaintiff’s procurement of insurance, including any discounting of medical expenses attributable to agreements between the insurance companies and plaintiff’s medical care providers. Therefore, plaintiff argues, the nondiscounted amount billed by the medical-care providers is the appropriate measure of damages. Plaintiff further contends that our decision in 
Peterson
 does not support defendants’ arguments.

Instead of addressing the specific questions presented in this appeal, as framed by the circuit court in its order, the appellate court in its opinion, and the parties in their briefs, the majority focuses its analysis upon the “dual nature of the collateral source rule.” Slip op. at 5. The majority explains that the collateral source rule has a substantive and evidentiary component, and holds that the certified question in this case implicates only the evidentiary component of the collateral source rule. According to the majority, the “only relevant question in the litigation between plaintiff and defendants is the reasonable value of the services rendered” (slip op. at 7), and that the certified question merely asks whether certain evidence is admissible in such cases. By framing the question presented in this way, the majority avoids addressing the circuit court’s order granting partial summary judgment to defendants which relies upon–and quotes from–our decision in 
Peterson
, and which directly implicates the application of the collateral source rule to the facts presented at bar.

The majority opinion then proceeds to analyze what it construes to be the question presented by this appeal. This analysis, and the resultant holding, consist of a single paragraph:

“[P]laintiff cannot make a 
prima facie
 case of reasonableness based on the bill alone, because she cannot truthfully testify that the total billed amount has been paid. Instead, she must establish the reasonable cost by other means–just as she would have to do if the services had not yet been rendered, 
e.g.
, in the case of required future surgery, or if the bill remained unpaid. Defendants, of course, are free to challenge plaintiff’s proof on cross-examination and to offer their own evidence pertaining to reasonableness of the charges.” Slip op. at 8.

The majority then reiterates its holding by stating that “[p]lainitff may present to the jury the amount that her health-care providers initially billed for services rendered.” Slip op. at 8.

 What does this mean? Although the majority answers the certified question by ruling that plaintiff may present the 
billed
 amount to the jury as the appropriate measure of damages, the majority then contradicts this statement by holding that plaintiff cannot make a 
prima facie
 case of reasonableness based upon the bill alone, as plaintiff “cannot truthfully testify that the total billed amount has been paid.” Slip op. at 8. The majority also holds that plaintiff must establish the reasonable cost of her medical expenses “by other means,” but those “other means” remain unspecified. Further, the majority would allow defendants “to challenge plaintiff’s proof on cross-examination and to offer their own evidence pertaining to the reasonableness of the charges,” but provides no insight as to what this evidence might be. Slip op. at 8.

Several questions and concerns arise from the majority’s analysis and holding in this case. First, what is to become of the well-settled rule in this state that a plaintiff establishes a 
prima
 
facie
 case that a medical expense is reasonable if that expense has been paid? Under ordinary rules of evidence, the 
paid
 bill would be the appropriate measure of damages. Yet, for unexplained reasons this is not the answer in the matter at bar.

 On the other hand, the majority appears to implicitly acknowledge that “evidence of the amount charged alone does not indicate reasonableness.” 
Victory Memorial Hospital v. Rice
, 143 Ill. App. 3d 621, 624 (1986). Thus, because plaintiff’s 
charged
 bill was 
not paid
, the majority admits that plaintiff cannot use the charged bill to show that the expenses were 
prima facie
 reasonable. The majority states that plaintiff must establish reasonable costs by unspecified “other means,” yet fails to elaborate on exactly what plaintiff may do.

It is well settled that “[w]here a hospital or medical bill is unpaid, the plaintiff has the burden of proving that the charges are reasonable, as well as that he or she has become liable to pay those charges. If no evidence as to a bill’s reasonableness is introduced, the bill is not admissible into evidence.” 11 Ill. Jur. 
Personal Injury & Torts
 §5:26 (2002); see also 
Spurr v. LaSalle
, 385 F.2d 322, 329 (7th Cir. 1967) (applying Illinois law, observing: “Common sense tells us it is most improbable that the insurer paid any medical expenses which could not have been shown to be reasonable in amount and necessary by reason of the injury. Actual payment of medical expense is prima facie evidence of reasonableness”).

The majority’s opinion will likely result in the parties conducting a trial within a trial on the issue of the reasonableness of a plaintiff’s medical expenses. Instead of the current practice wherein stipulations are often made between the parties with respect to the reasonableness of medical bills, the parties will be forced to gather information about the billing practices of every health-care provider in the case. In addition, witnesses familiar with the billing practices of each provider will have to be called to testify with respect to each amount charged, and the reasonableness of that amount for the specific procedure performed, given the provider’s experience and reputation and the relevant medical community. This evidentiary process directly contravenes the rationales for holding that a 
paid
 bill constitutes 
prima facie
 evidence that the bill is reasonable: that a free and voluntary payment of a charge shows the reasonable value of that service, and that it comports with efficient judicial administration by eliminating unnecessary cost and inconvenience to the parties by having to call multiple witnesses. Presenting testimony with respect to billing practices and procedures will no doubt add considerable time and expense for the court and the litigants without advancing the goals of recovery for the plaintiff.

In addition, I note that the majority holds that defendants may challenge plaintiff’s proof on cross-examination, or “offer their own evidence pertaining to the reasonableness of the charges.” Slip op. at 8. Again, no guidance is offered by the majority to the bench and bar on what may be introduced.

It is my belief that the evidentiary procedure required by the majority will be unworkable. A possible scenario may unfold as follows. Plaintiff, with supporting testimony from witnesses familiar with the billing practices of the provider, will present the amount initially billed by her health-care providers as the reasonable measure of her damages to the jury. Defendant, attempting to show that the billed amount does not reflect the reasonable value of the services provided, will cross-examine plaintiff’s witnesses and question whether the amounts charged by the provider are the amounts actually paid by the patient for the services rendered. It is very likely that plaintiff’s counsel would immediately object to such a line of questioning on the basis that these questions would ultimately reveal that plaintiff received payment from a collateral source–her insurance company–and therefore violate the collateral source rule. Thus, under such a scenario, defendants may very well have no means of challenging the reasonableness of the billed amount of medical services as the measure of plaintiff’s damages.

If, by its opinion, the majority is signaling that such a line of questioning by defendants is acceptable under these facts, then I point out that the majority is compromising the protections of the collateral source rule–the very rule that it is claiming to support. The majority emphasizes–and I agree–that the collateral source rule prevents evidence that a medical bill was paid by insurance. Yet, under the majority’s opinion, if evidence is proffered that health-care providers initially charged plaintiff a certain amount and later accepted a reduced amount as payment in full, the jury may be confused and left to create an explanation. It may be that jurors would deduce the presence of insurance. Allowing evidence of both the billed and discounted amounts compromises the collateral source rule, confuses the jury, and potentially prejudices both parties in the case. Each jury will resolve the issue differently, leading to inconsistency wherein similarly situated parties will be treated differently. It is my belief that the majority’s opinion will only further confuse the bench and bar on these already confusing issues.

The instant appeal presents a number of important legal principles and public policy concerns that require thoughtful analysis by this court. The last time this court spoke on the tension between the concept of compensatory damages and the operation of the collateral source rule was in 1979–over 25 years ago–in 
Peterson
. In that case, we delivered several strong statements with respect to this tension, and, as a result, became one of the few jurisdictions to limit the scope of the collateral source rule. Since 1979, the medical marketplace has drastically changed. For example, today, the discounting of medical bills is a common practice in the health-care field. 
Mitchell v. Hayes
, 72 F. Supp. 2d 635, 637 (W.D. Va. 1999); see M. Beard, 
The Impact of Changes in Health Care Provider Reimbursement Systems on the Recovery of Damages for Medical Expenses in Personal Injury Suits
, 21 Am. J. Trial Advoc. 453 (1998). I believe that this case presents this court with the important opportunity to decide whether to specifically delineate the limitations previously imposed on the collateral source rule in 
Peterson
, or to hold that Illinois will now join the majority of jurisdictions that apply a pure collateral source rule. Indeed, if Illinois were to join the majority of other states on this issue, there would be no dispute with respect to whether the 
charged
 or the 
paid
 bill would be the appropriate measure of damages–it would be clear that the 
charged
 bill would be the only evidence to be admissible.

I wish to make abundantly clear that I do not suggest which alternative this court should adopt. I note, however, that a clear-cut rule benefits the parties and the court because it limits discovery, eliminates unneeded confusion and complexity in trials, promotes predictability and conserves scarce judicial resources. The court should take this opportunity to clarify the scope and extent of the collateral source rule in Illinois. The majority omits discussion of 
Peterson
 and the unique way that the collateral source rule is treated in this state, and has, instead, relied on general treatise or hornbook quotations, which speak to the 
general
 treatment of the collateral source rule, rather than to the unique way that it has developed in Illinois.

In sum, unlike the majority, I would address the question presented by this appeal, which involves an examination of this court’s opinion in 
Peterson 
and the conflict between the principles of compensatory damages and the collateral source rule. In avoiding the important issues squarely presented by this appeal, the majority creates a new evidentiary procedure that represents a major change in trial practice, and which appears to be unworkable. For these reasons, I respectfully dissent.